Richard B. ROALSON, Appellant,

v.

C.C. CHANEY, Appellee.

No. 68526.

Supreme Court of Iowa.

June 15, 1983.

August H. Luthens, Des Moines, for appellant.

William J. Pattinson of Curtis, Finn & Pattinson, Ames, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON and CARTER, JJ.

McCORMICK, Justice.

This case involves an action for alleged intentional interference with marital conciliation and intentional infliction of emotional distress. The questions are whether this court will recognize a new tort for "interference with marital conciliation" and whether the record is sufficient to withstand summary judgment on the emotional distress claim. In entering summary judgment for defendant, the trial court held that interference with conciliation is not actionable and that the record does not show a genuine issue of material fact on the emotional distress claim. We affirm.

Principles governing summary judgment are reviewed in *Enochs v. City of Des Moines,* 314 N.W.2d 378, 379–80 (Iowa 1982). In accordance with these principles, we recite the evidence in its light most favorable to plaintiff, the party against whom the motion was made.

Plaintiff Richard B. Roalson and Donna Roalson were married in October 1979. Each had previously been married. They lived in Ames in a mobile home brought into the marriage by Donna. In January 1981 Donna went to Colorado to be with her terminally ill stepfather. While she was there she talked to her mother about divorcing Richard. When Donna returned to Iowa she told Richard she wanted a divorce and asked him to leave the home. He persuaded her to reconsider her decision, but a couple of days later she told him it was final. She agreed Richard could stay in the mobile home until he found a suitable apartment. He remained in the home until May 1st.

Defendant C.C. Chaney, an 80-year-old cousin of Donna's stepfather, learned of Donna's divorce plans from Donna's mother. On approximately February 20, 1981, Chaney called Donna at her place of employment and asked her if she was getting divorced. Donna confirmed that she was. In the succeeding weeks Chaney called Donna on several occasions and sent her cards and letters. Donna traveled to Colorado in March and April at Chaney's expense to get better acquainted with him. During the March visit, Chaney asked Donna to consider marrying him to provide him companionship in exchange for financial security. In May and August Chaney's attorney prepared proposed antenuptial agreements, but they were not executed, and the record does not disclose that the matter was pursued.

Donna's dissolution petition was filed March 3, 1981. From then until May 1st when Richard left the home, Richard was present on several occasions when Chaney called Donna. In addition, he saw several of the cards and letters Chaney sent her. By reading her mail, Richard learned Chaney had sent money to Donna and furnished a car to her on one of her Colorado trips. Donna told Richard that Chaney was a wealthy man, and on one occasion she told him Chaney was putting a "hard sell" on her to marry him.

On May 22, 1981, Richard simultaneously filed an application for appointment of a conciliator in the dissolution case and the petition in the present action. He accused Chaney in the tort petition of intentionally interfering with marital conciliation and with intentionally inflicting emotional distress on him. Defendant denied the material allegations of the petition and subsequently filed a motion for summary judgment. The motion was submitted to the court on plaintiff's deposition, affidavits by Donna and Chaney, answers to interrogatories by Chaney, and various exhibits.

In sustaining the motion on the interference with conciliation claim, the trial court characterized it as a "repackaged" alienation of affections action. On the emotional distress claim, the court found the evidence insufficient to show a genuine issue of material fact on essential elements of the cause of action. Richard contends the court erred in these findings and in the resulting holding.

**I.** *Interference with conciliation.* Mandatory conciliation procedures are available to parties in a dissolution action upon application by one of them. *See* Iowa Code § 598.16 (1983). Nothing in the language of the statute purports to give one of the spouses an independent tort action against a third person for attempting to influence the other spouse not to reconcile. Richard contends, however, that such an action should be recognized at common law to give the conciliation procedure an opportunity to work.

The arguments for and against recognizing an independent tort action for damages for interference with conciliation are similar to the arguments for and against recognizing a tort action for alienation of affections. The gist of Richard's theory is that a tort action for damages should be available to deter or punish a third party who interferes with marital conciliation by establishing a relationship with one of the spouses. In this context the proposed action is merely a specific application of the broader theory of action for alienation of affections. The relational interest and actionable conduct are identical.

The trial court was therefore correct in holding that Richard's claim on this ground is barred by this court's abrogation of the cause of action for alienation of affections in *Fundermann v. Mickelson,* 304 N.W.2d 790 (Iowa 1981).

**II.** *The emotional distress claim.* Richard alternatively seeks to maintain the action on the theory of intentional infliction of emotional distress. This court explained the distinction between the elements of an intentional emotional distress claim and the elements of alienation of affections in *Van Meter v. Van Meter,* 328 N.W.2d 497 (Iowa 1983). In rejecting a contention that an emotional distress claim should not be available in the context of a failed marriage, the court observed that the viability of an emotional distress claim ordinarily could not be determined on a motion to dismiss: "Whether such facts are present is more appropriately resolved upon presentation of evidence through summary judgment ...

or by trial." *Id.* at 498. In the present case, the issue is raised through summary judgment proceedings.

In recognizing the tort action for intentional infliction of emotional distress, this court adopted the formulation of the doctrine in *Restatement (Second) of Torts* § 46(1) at 71 (1965). *See Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252, 255 (Iowa 1972). One of the elements is outrageous conduct by the defendant. *Id.* In this case, the trial court found the evidence in the summary judgment record insufficient to demonstrate a genuine issue of fact on the outrageous conduct element.

As observed in *Restatement* comment h at 77, "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery...." The standard of outrageousness is explained as follows:

*Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against an the actor, and lead him to exclaim, "Outrageous!"

*Id.,* comment d at 72–73.

We believe the record in the present case shows no genuine issue of material fact exists concerning conduct by the defendant that could reasonably be regarded as outrageous under this standard. Chaney's com-

munications were intended for Donna, not for Richard. Moreover, the record does not show Chaney had any reason to doubt Donna's assurance that she and Richard were divorcing. Chaney's contacts with Donna concerned her future plans, not her relationship with Richard. He may have been guilty of poor judgment in proposing marriage to Donna while she was still married to Richard but no trier of fact could reasonably find his conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

The trial court did not err in sustaining defendant's motion for summary judgment.

AFFIRMED.