**M.H., D.H., and P.T., By and Through their Conservators, Hubert F. CALLAHAN and Glenice Callahan, Appellants,**

v.

**STATE of Iowa, Iowa Department of Human Services, Kenard Combs, Daniel Ciha, Dennis Haas, and Janet Christianson, Appellees,**

**Families, Inc., and Michael Ryan, Defendants.**

No. 84–1984.

Supreme Court of Iowa.

April 16, 1986.

Gary J. Shea of Shea Law Offices, Cedar Rapids, and Edward J. Gallagher, Jr., and Edward J. Gallagher, III, of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellants.

Thomas J. Miller, Atty. Gen., Gordon F. Allen, Sp. Asst. Atty. Gen., and Patrick J. Hopkins, Asst. Atty. Gen., for appellees.

Lawrence L. Marcucci of Williams, La-Marca, Marcucci, Wiggins & Anderson, Des Moines, for amicus curiae Ass'n of Trial Lawyers of Iowa.

Considered by HARRIS, P.J. and LARSON, SCHULTZ, CARTER and WOLLE, JJ.

SCHULTZ, Justice.

This litigation was commenced on behalf of three children who were sexually abused by their mother and her boyfriend. Their claims are against the State, its department of human services and department employees, and a private corporation and its employee who provided counseling services. This interlocutory appeal involves only issues arising from counts involving two separate types of tort claims presented against the State, its department and department employees under the Iowa Tort Claims Act, Iowa Code chapter 25A. The first claims are for negligently delaying the removal of the children from the home of an inadequate and abusive parent. Plaintiffs' second cause of action is for the intentional infliction of emotional distress.

As this is an appeal from a ruling on a motion to dismiss, we assume the facts stated in the pleadings are true. This action was commenced by the conservators of the three children. We shall refer to the children as plaintiffs. In October 1977 plaintiffs and their mother moved from South Dakota to Cedar Rapids, Iowa. South Dakota Department of Social Services records document reported incidents of physical abuse. Information regarding the abuse and the agency's involvement was transmitted to the Cedar Rapids Office of the Iowa Department of Human Services (DHS), but DHS made no follow-up after receiving this information.

In November 1980 the Cedar Rapids office of DHS received a report that plaintiffs were being physically abused and denied critical care. A DHS investigation substantiated these reports. Thereafter, DHS contracted with Families, Inc. to provide counseling services to plaintiffs, their mother and her live-in boyfriend. The boy-

friend had a prior criminal history which included a conviction of committing lascivious acts with a child. He abused alcohol and had a history of being physically violent. The counseling services that Families, Inc. provided were terminated in January 1981 by direction of the mother and her boyfriend. Iowa Code § 232.71(8) (1981). DHS did not provide any follow-up supervision by its own employees or through contract with other agencies.

In May 1981 DHS, at its Cedar Rapids office, received a report that plaintiffs were being denied critical care. DHS child abuse investigators, responding to such a report, found the report to be unsubstantiated and plaintiffs were not removed from the home. DHS took no further action on the investigation.

In September 1981 DHS received a report of suspected child abuse regarding conduct of the mother and her boyfriend directed at plaintiffs which included physical abuse, sexual abuse, and neglect by failing to provide critical care. These reports were substantiated by DHS investigators and plaintiffs were removed from the home and placed in a foster home.

On November 18, 1981, following an evidentiary hearing, the juvenile court entered an order finding plaintiffs to be children in need of assistance. Iowa Code § 232.96. At the hearing, the mother testified under oath that the boyfriend was the sexual abuse perpetrator and that she was not actually involved in such acts.

Thereafter, sexual abuse charges were filed against the boyfriend. He was convicted and sentenced to serve a term in prison. Later, the mother admitted to a person acting on behalf of Families, Inc. that she had actively engaged in sexual abuse of the plaintiffs. She acknowledged she participated in such abuse which started in the spring of 1981 and continued up until the time the children were removed from her home. The county attorney's office subsequently filed criminal charges against the mother. She pled guilty to perjury and lascivious acts with a child and was sentenced to serve a term of imprison-

ment. Thereafter, petitions to terminate the parental rights of the mother and the plaintiffs' respective fathers were filed. Iowa Code § 232.111. On December 27, 1983, the court terminated these parental rights.

After complying with the notice procedures of the Iowa Tort Claims Act, section 25A.5, plaintiffs' conservators commenced this action in district court. Counts I, II, IV and V of their petition allege the State and DHS negligently delayed the removal of plaintiffs from the home of an inadequate and abusive parent. The latter two counts also allege negligence claims against specific DHS employees. Count VII of the petition is an intentional infliction of emotional distress claim against the State, DHS and one of its employees, alleging that the employee withheld information concerning the mother's admission of involvement in the sexual abuse. Defendants filed a motion to dismiss all these claims. The district court dismissed the negligence counts against the State, DHS and its employees, but overruled a motion to dismiss the intentional infliction of emotional distress claim. We granted interlocutory appeal on both rulings.

I. *Negligence.* In their petition, plaintiffs advance numerous negligence claims which generally fall into two categories. First, there are allegations of negligence based on breach of a common law duty. Secondly, plaintiffs advance negligence claims predicated upon a violation of certain statutory duties.

In dismissing the negligence counts, the district court rejected plaintiffs' contentions that a valid cause of action existed grounded on breach of either a common law or statutory duty. The trial court relied primarily on our recent holding in *Rittscher v. State,* 352 N.W.2d 247 (Iowa 1984), to sustain defendants' motion. The plaintiff in *Rittscher* sued the State, its department of social services and various department employees. Plaintiff alleged she had been harmed by defendants' failure to intervene and take steps to protect plaintiff from her mother and her custodi-

an. 352 N.W.2d at 249. We characterized plaintiff's allegations as a "charge that social services personnel negligently failed to place [plaintiff] permanently in foster homes or elsewhere; she was negligently left exposed to her inadequate mother." *Id.* at 251. We rejected the contention that there was a cause of action based upon either common law or statutory grounds. *Id.* at 251–52. Plaintiffs urge the district court's reliance upon *Rittscher* in this case is misplaced.

A. *Common law duty.* Plaintiffs first contend the common law recognizes a cause of action against the State for social services malpractice. This contention directly contradicts our holding in *Rittscher.* The plaintiff in *Rittscher* argued that the doctrine of parens patriae has always existed and that it places responsibility on the State to care for its citizens. 352 N.W.2d at 250. We responded that not every negligence claim creates a civil cause of action and then held "a tort does not arise from the State's role as parens patriae." *Id.* at 251.

Plaintiffs correctly point out, however, that we specifically limited our holding in *Rittscher* to the specific facts of that case. *See* 352 N.W.2d at 251. We declined to decide whether we would follow other jurisdictions which recognize tort actions for the negligent placement of children in foster homes or other possible claims against state personnel for exposing children to physical danger. *See id.* Plaintiffs maintain the fact situation in this case is considerably different than the facts we examined in *Rittscher.* Plaintiffs also contend they do not rely solely on the State's role as parens patriae to establish a duty under social service malpractice; rather, they rely on established and evolving tort principles. They urge defendants repeatedly took affirmative action by initiating and conducting investigations of child abuse reports regarding the specific plaintiffs. Further, they assert this action created a special fiduciary relationship with them, a relationship distinguishable from that with the public at large.

Our holding in *Rittscher* encompassed the principle that the State's responsibility to care for its citizens, including protecting a child from his or her parent, does not give rise to tort liability when social service personnel negligently fail to take steps to remove a child from an inadequate parental home. 352 N.W.2d at 251. We believe plaintiffs' claim in this case is substantially the same as a claim arising from the State's failure to protect a child from his or her parent. Plaintiffs do not present a cause of action that is an exception to the *Rittscher* principle.

We also do not agree with plaintiff's contention that this case differs from *Rittscher.* The plaintiffs in this case allege the repeated notices of dangerous conditions, repeated affirmative contacts with them, and the State's contracting with a private agency to provide rehabilitative services distinguishes their case from *Rittscher.* We believe these differences only go to the quantity or weight of the evidence rather than to the issue of whether such type of negligence creates a civil cause of action. The specific issue is whether the claimed wrong is actionable. In *Rittscher* we held that such conduct did not provide an action in tort. We find no reason to retreat from this holding.

B. *Statutory duty.* Plaintiffs next attack the district court's determination that they failed to state a cause of action under the relevant statutory provisions. Plaintiffs acknowledge the statement we made in *Rittscher* that "[s]tatutes pertaining to children, such as those on children in need of assistance, Iowa Code ch. 232, div. III (1981), do not evince an intent to create private damage actions under the test in *Seeman v. Liberty Mutual Insurance Co.,* 322 N.W.2d 35 (Iowa 1982)." 352 N.W.2d at 251. They submit, however, that we did not foreclose a cause of action arising out of the statute by judicial implication. While we did not directly address all of the relevant provisions of chapter 232 in our *Rittscher* opinion, we believe our message was clear.

■ An element of negligence is a duty or standard of care owed by the actor to the victim. *Seeman* 322 N.W.2d at 37. Although a statutory enactment may create such a duty or standard of care, "it does not provide the cause of action." *Id.* When a statute does not expressly authorize private suits it is a matter of legislative intent whether there is an implied cause of action. *Id.* at 40. In *Seeman* we adopted a four-factor test from a Supreme Court decision entitled *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to make this determination. 322 N.W.2d at 40. We stated, however, "that when legislative intent is otherwise clear, it is not necessary to resort to the four-factor test." *Id.*

■ We believe it is clear that in enacting Iowa Code sections 232.67–.71 and 25A.14 the legislature did not intend to imply a tort action against the State, its department and employees for a failure to thoroughly and promptly report and investigate incidents of child abuse. The legislature did, however, explicitly establish civil causes of action for the wrongful dissemination of child abuse information, Iowa Code section 235A.20, and for the knowing failure by specified parties to report a suspected case of child abuse, Iowa Code section 232.75(2). Plaintiffs do not base their negligence causes of action under either of these sections, however. We note that legislative intent is expressed by both inclusions and exclusions; express reference to one thing implies the exclusion of others. *In re Estate of Wilson*, 202 N.W.2d 41, 44 (Iowa 1972). As detailed above, the legislature has explicitly addressed situations when civil liability attaches. If the legislature wanted to recognize other statutory violations that would produce civil liability, it would have so indicated.

■ Other reasons support this conclusion. A state agency and its employees would be placed in a rather precarious situation if they could be held liable for a failure to remove a child from the home of his or her parents. On one hand, the purpose of these statutes is to protect children from child abuse, which includes protection from an abusing parent. Iowa Code § 232.67. On the other hand, the department has to use reasonable efforts to help prevent or eliminate the need for removing the child from his or her home. *Id.* If the department determines the best interest of the child requires juvenile court action, it shall initiate such action. § 232.71(9) (1983). Even after the dispositional hearing, the juvenile court shall, whenever possible, permit the child to remain at home with the child's parent. § 232.102(3). Consequently, the department and its employees receive divergent instructions—to protect the child but make a reasonable effort to keep him or her in the home. Such a decision requires department employees to engage in a delicate balancing of interests. Of course, the best interest of the child is the overriding concern. § 232.1.

These legislative prescriptions place broad discretion in the department employees. Although their decisions are made under less exigent circumstances, these decisions made by department employees bear similarity to those made by peace officers. We deemed "public policy considerations" to be at stake when we rejected a tort claim against a peace officer for the negligent investigation of a crime. *Smith v. State*, 324 N.W.2d 299, 301 (Iowa 1982); *see also Hildenbrand v. Cox*, 369 N.W.2d 411, 415 (Iowa 1985) (peace officer not liable for tort of negligent failure to detect a person's intoxicated condition and protect that person from harm); *Bockelman v. State Department of Transportation*, 366 N.W.2d 550, 553–54 (Iowa 1985) (no tort action against department for violation of statute requiring the suspension of driver's license of a habitual offender). In *Smith* we stated:

> The public has a vital stake in the active investigation and prosecution of crime. Police officers and other investigative agents must make quick and important decisions as to the course an investigation shall take. Their judgment will not always be right; but to assure continued vigorous police work, those charged with

that duty should not be liable for mere negligence.

324 N.W.2d at 301.

We also believe public policy reasons are persuasive in the dismissal of these negligence claims. As indicated, department employees weigh the interests of the parties in their resolution of proper action in a family abuse case. Their judgments should not be restrained by apprehension about being liable for their decision in a negligence suit. Accordingly, we do not recognize plaintiffs' negligence claims based on breach of either a common law or statutory duty.

II. *Intentional infliction of emotional distress.* Count VII of plaintiffs' petition seeks damages from the State, DHS and one of its employees for the intentional infliction of emotional distress. They allege the employee, while acting in the scope of her employment, received information that the mother was an active participant in the sexual abuse of her children. Further, plaintiffs claim this information was not timely revealed to lawful authorities, doctors and professionals conducting evaluations of the mother, or the juvenile court in the CINA proceedings. Plaintiffs contend such intentional or reckless withholding of information was outrageous conduct by the employee toward plaintiffs. Further, they allege such outrageous conduct was the direct cause of mental anguish which resulted from plaintiff's anxiety and apprehension about the possible return to their mother's home.

Defendants moved for a dismissal of count VII claiming the court did not have jurisdiction to hear the claim and, as a matter of law, the petition did not state a cause of action for the intentional infliction of emotional distress. The district court overruled this motion and we permitted the State, DHS and its employee to cross-appeal this ruling.

A. *Jurisdiction.* Defendants maintain that an intentional infliction of emotional distress cause of action is a claim outside the scope of the limited waiver of sovereign immunity provided in chapter 25A (1983). Defendants reason that an action for intentional infliction of emotional distress requires a showing of outrageous conduct. They urge that outrageous conduct is at least the legal equivalent of willful and wanton conduct. Defendants then point out that "willful and wanton conduct, of any employee of the state" is excepted from the definition of "claim" under section 25A.2(5)(b) (1983).[1] From this, they urge that plaintiffs do not assert a claim under section 25A.2(5) for their cause of action in count VII.

Prior to the enactment of chapter 25A, the doctrine of sovereign immunity prevented our courts from hearing cases brought against the State or its agencies sounding in tort. *Lloyd v. State,* 251 N.W.2d 551, 555 (Iowa 1977). The removal of immunity from suit pursuant to chapter 25A is limited "to the extent provided in this chapter." Iowa Code § 25A.4. Consequently, jurisdiction to hear this case depends upon whether the exception in section 25A.2(5)(b) is applicable.

The issue of whether an employee is excepted from liability under section 25A.2(5)(b) in his or her individual capacity was not addressed by either party. Also, we note the definition of "claim" under section 25A.2(5)(a) (1983) does not exclude willful and wanton conduct by an employee.[2] We

---

1. The legislature subsequently amended subsection (5)(b) by striking this exception. 1984 Iowa Acts ch. 1259, § 1. However, the willful and wanton conduct exception is incorporated in sections 25A.21, .22 (1985). 1984 Iowa Acts ch. 1259, §§ 2, 3.

2. Iowa Code section 25A.2(5) (1983) states:
   5. *"Claim"* means:
   a. Any claim against the state of Iowa for money only, on account of damage to or loss

of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury or death.
   b. Any claim against an employee of the state for money only, on account of damage to or loss of property or on account of person-

will assume for the purpose of this discussion only that the exception in subsection (5)(b), willful and wanton acts of an employee, is available to the defendants. Even with this assumption, we do not believe that plaintiffs' intentional infliction of emotional distress claim falls within this exception.

■ Two elements of the tort of intentional infliction of emotional distress are (1) outrageous conduct by the defendant and (2) the defendant's intentional causing, or reckless disregard of the probability of causing, emotional distress. *Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193, 197 (Iowa 1985); *Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108, 118 (Iowa 1984). The common meaning of willful is some act done deliberately or intentionally. Consequently, willful conduct signifies acts done with design and purpose. Recklessness is a heedless disregard for or indifference to others, which may include willfulness or wantoness; however, conduct may be reckless without being willful and wanton. *Sechler v. State*, 340 N.W.2d 759, 764 (Iowa 1983) (quoting *Vipond v. Jergensen*, 260 Iowa 646, 650, 148 N.W.2d 598, 600–01 (1967)). "Without defining the misconduct of wantonness, it means something more than recklessness." *Id.* (citing *Sanburn v. Rollins Hosiery Mills*, 217 Iowa 218, 224, 251 N.W. 144, 147 (1933)). Consequently, the element of "reckless disregard of the probability of causing emotional distress" may be established without showing that such act is either willful or wanton.

■ We also conclude that "outrageous conduct" may be proved without showing that such conduct is willful and wanton. In order for conduct to be "outrageous" it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harsha v. State Savings Bank*, 346 N.W.2d

791, 801 (Iowa 1984) (quoting Restatement (Second) of Torts § 46 comment d (1965)). This definition does not necessarily require willful and wanton conduct.

■ We do not deem outrageous conduct or reckless disregard of the probability of causing emotional distress to be synonomous with willful and wanton conduct. Consequently, the exception relied upon by defendants is not applicable. We conclude that the district court correctly overruled defendants' motion to dismiss based on the lack of subject matter jurisdiction.

B. *Adequacy of the petition.* Defendants also urge that count VII of plaintiffs' petition does not state a cause of action for the tort of intentional infliction of emotional distress. We examine plaintiffs' pleadings to determine the nature and sufficiency of their claim.

The basic facts alleged in count VII indicate that the DHS employee did not disclose to lawful authorities that the mother had admitted participating in sexual abuse of the children. Plaintiffs claim the withholding of such information was intentional and reckless conduct. Further, they assert such conduct was outrageous in that it caused the children mental anguish resulting from anxiety and apprehension about possibly returning to an environment of physical peril and emotional endangerment.

In addition to their motion to dismiss count VII on jurisdictional grounds, defendants moved to dismiss the count because there was no private cause of action running in favor of the plaintiffs. Defendants argue the misconduct alleged could not, as a matter of law, be outrageous conduct. The district court overruled the motion and indicated that such arguments related to factual disputes as to whether or not plaintiffs can prove their claim of intentional infliction of emotional distress. Defendants now assert the issue of outrageousness is not fact-dependent, but is determin-

al injury or death, caused by the neglect or wrongful act or omission, *except an act of malfeasance in office or willful and wanton conduct,* of any employee of the state while

acting within the scope of his office or employment.
(Emphasis added.)

able at a motion-to-dismiss stage by the court as a matter of law. We disagree.

We have recognized the principle that it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous. *Northrup*, 372 N.W.2d at 198; *Vinson* 360 N.W.2d at 118; *Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983). However, this determination will generally not take place on a motion to dismiss. Under "notice pleading," all that is required is a short and plain statement of the claim for relief, with no requirement of pleading specific facts. Iowa R.Civ.P. 69(a). In order to sustain a motion to dismiss for failure to state a claim for relief, we must conclude that no state of facts is conceivable under which plaintiffs might prove their right of recovery. *Van Meter v. Van Meter*, 328 N.W.2d 497, 497 (Iowa 1983). We have already determined that a tort action for social worker malpractice is not available against the State employees. We cannot, however, conclude as a matter of law that plaintiffs cannot present sufficient evidence to establish the separate tort of intentional infliction of emotional distress. *See Gross v. United States*, 676 F.2d 295, 304 (8th Cir. 1982) (claim of intentional infliction of emotional distress is viable action under Federal Tort Claims Act) and *Hoctel v. State*, 343 N.W.2d 832, 833 (we may refer to federal cases interpreting Federal Tort Claims Act in determining whether Iowa Tort Claims Act permits such an action against the State). The issue whether such facts are present "is more appropriately resolved upon presentation of evidence through summary judgment ... or by trial." *Van Meter*, 328 N.W.2d at 498 (citations omitted). The district court correctly determined that this was not the proper stage of the trial to make this decision.

In conclusion, the trial court correctly dismissed the plaintiffs' negligence claims, counts I, II, IV and V, and denied dismissal of the intentional infliction of emotional distress claim, count VII.

AFFIRMED.