David A. KUNAU, Plaintiff-Appellant,

v.

PILLERS, PILLERS & PILLERS, P.C., Defendant-Appellee.

No. 85–1699.

Court of Appeals of Iowa.

Feb. 25, 1987.

Stephen P. Wing of Dwyer & Wing, Davenport, for plaintiff-appellant.

John P. Murphy of Holleran, Shaw, Murphy & Stoutner, Clinton, for defendant-appellee.

Heard by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SCHLEGEL, Judge.

The plaintiff sued his former attorney alleging legal malpractice and related causes of action. The district court granted the defendant a pretrial summary judgment as to some portions of the petition and a jury returned a verdict for the defendant on the remaining portions of the petition. The plaintiff has appealed from the resulting judgment. We affirm.

In late 1980 or early 1981 David Kunau contacted attorney James Pillers, seeking some sort of legal action against Dr. James Miller, who had had an affair with Kunau's wife. On March 3, 1981, attorney Pillers filed an alienation of affections suit against Miller on behalf of David Kunau. However, on April 15, 1981, the Iowa Supreme Court abolished the cause of action for alienation of affections. *Fundermann v. Mickelson* 304 N.W.2d 790 (Iowa 1981). Opposing counsel moved to dismiss the Kunau suit on the basis of the *Fundermann* holding; the district court granted this motion and dismissed the lawsuit. Attorney Pillers then filed a second suit against Miller on Kunau's behalf, relying on the same facts and pleading such theories as intentional infliction of emotional distress, interference with contract, and interference with prospective economic advantage. The district court dismissed this second suit on the ground it was precluded under the doctrine of res judicata because of the dismissal of the first suit.

Attorney Pillers appealed on Kunau's behalf from each of these two dismissals. However, in each case the appeal had been preceded by an unsuccessful posttrial motion, and in each case the notice of appeal was timely only as to the ruling on the motion, not as to the dismissal itself. Both appeals were dismissed by the Iowa Supreme Court on the ground the notices of appeal were untimely because the posttrial motions were not the sort of motions which could extend the time for appeal under Iowa Rule of Civil Procedure 179(b). *Kunau v. Miller*, 328 N.W.2d 529 (Iowa 1983).

On the basis of the preceding facts, David Kunau later filed the present action against attorney Pillers for legal malpractice and related causes of action. The district court granted the defendant's motion for summary judgment as to the legal malpractice claim after deciding that Kunau could not have prevailed in the underlying actions. The district court also granted the

defendant a summary judgment as to those parts of the petition alleging intentional or negligent infliction of emotional distress. The district court held that such causes of action are not available in the context of the attorney-client relationship. The only parts of Kunau's petition left after these rulings were divisions alleging that Pillers had negligently accepted employment in a case which he knew or should have known did not constitute a valid cause of action, and that Pillers had breached his employment contract by failing to advise Kunau that he had no valid cause of action. These parts of the petition were tried to a jury, which returned a verdict for Pillers on all propositions submitted.

Kunau contends the district court erred in ruling on the summary judgment motions by concluding, as a matter of law, that Kunau could not have prevailed in the second of the underlying lawsuits against Miller which alleged such theories as intentional infliction of emotional distress, interference with contract, and interference with prospective economic advantage. Kunau asserts the district court erred by holding that the tort of intentional infliction of emotional distress would not have prevailed against Miller because the element of outrageousness was absent. Kunau also asserts the district court erred by apparently concluding, although without expressly so holding, that Kunau could not have prevailed against Miller on the other theories stated in the second suit against Miller.

Kunau also contends the district court erred in ruling on the summary judgment motions, by holding that the torts of intentional and negligent infliction of emotional distress are not available in the context of the attorney-client relationship.

Kunau's remaining issues relate to events which occurred during the trial of the limited portions of the petition which survived the summary judgment motions.

During trial the defendant presented a lawyer as an expert witness to testify that James Pillers had conformed to the applicable standard of care. This witness had formed his opinion in part by reading discovery depositions made by David Kunau, Kunau's wife, and Pillers. These discovery depositions were admitted into evidence as part of the foundation for the expert testimony. On appeal Kunau contends the admission of these discovery depositions was erroneous, where the deponents had all testified at trial.

Kunau also contends the evidence at trial did not support the jury's verdict. He asserts the evidence established that Pillers had breached his employment contract.

Finally, Kunau contends the district court erred by instructing the jury that Kunau could recover for breach of contract no more than the amount of a retainer given to Pillers. Kunau asserts that Piller's breach of his employment contract also resulted in consequential damages for emotional distress and frustration. He argues the jury should have been instructed that such damages, in addition to a mere refund of the retainer, were available to Kunau.

In reviewing the grant of summary judgment under Iowa Rule of Civil Procedure 237(c), the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Suss v. Schammel*, 375 N.W.2d 252, 254 (Iowa 1985); *Brown v. Monticello State Bank*, 360 N.W.2d 81, 83–84 (Iowa 1984). It can be fatal to the party resisting the summary judgment motion to rely alone on a perceived weakness in the movant's contentions. *Suss v. Schammel*, 375 N.W.2d at 254. The resisting party must set forth specific facts showing there is a genuine issue for trial. *Iowa Civil Rights Commission v. Massey-Ferguson, Inc.*, 207 N.W.2d 5, 8 (Iowa 1973); Iowa R.Civ.P. 237(e). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984).

We agree with the trial court that the defendant met the burden of showing no issue of material fact existed relating to the three theories of tort liability advanced

by the plaintiff. The Iowa Supreme Court has adopted the general principle that:

> ... a client who seeks to recover against his or her lawyer in a malpractice action based upon negligent handling of a lawsuit for money damages must not only prove negligence but must also prove that, absent the lawyer's negligence, the underlying suit would have been successful.

*Baker v. Beal*, 225 N.W.2d 106, 109 (Iowa 1975); *Koeller v. Reynolds*, 344 N.W.2d 556, 558 (Iowa Ct.App.1983). Even assuming that the defendant acted negligently in not filing timely notices of appeal, *see Kunau v. Miller*, 328 N.W.2d 529, 531, we agree with the trial court that even absent such negligence, the underlying suit would not have been successful.

■ The first cause of action which plaintiff claims may have been successful against the defendant is the tort of intentional infliction of emotional distress. Addressing this issue, the district court said that even if everything asserted by plaintiff was true, those facts did not present that degree of outrageousness going beyond all possible bounds of decency which is regarded utterly intolerable in a civilized community. We agree. In *Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108, 118 (Iowa 1984), our supreme court identified the elements of the tort of intentional infliction of emotional distress:

> (1) Outrageous conduct by the defendant;
> (2) The defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;
> (3) Plaintiff suffering severe or extreme emotional distress; and
> (4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

It is for the court to determine in the first instance whether the relevant conduct may reasonably be regarded as outrageous. *Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983). In order to find outrageousness, the court must determine if the conduct is "so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harsha v. State Savings Bank*, 346 N.W.2d 791, 801 (Iowa 1984). It is not enough to show that the defendant has acted with tortious intent or that defendant has intended to inflict emotional distress, or that his conduct could be characterized by "malice," or by a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Vinson v. Linn-Mar Community School District*, 360 N.W.2d at 118. Here, the trial court looked at the relevant conduct and determined that, as a matter of law, Dr. Miller's conduct was not outrageous. There are adequate grounds for such a finding. The relationship between Mrs. Kunau and Dr. Miller lasted for a number of years. The Kunaus are still married. As Judge Briles noted, adultery is no longer a crime in Iowa and marriage dissolutions are easily obtained. We do not say that sexual relations between professional and patient would never give rise to a finding of outrageous conduct. We only find that the facts of this case could not support a conclusion that the dentist's conduct was "outrageous." Since this first element of the tort of intentional infliction of emotional distress must fail, the court did not err in granting summary judgment to defendant on this issue.

■ The plaintiff also asserts that the district court erred in apparently concluding, although without expressly so holding, that Kunau could not have prevailed against Miller on the other theories advanced by plaintiff. Plaintiff had pleaded a cause of action for interference with contract and a cause of action for interference with prospective economic advantage. *Van Meter v. Van Meter*, 328 N.W.2d 497, 498 (Iowa 1983), made clear that the tort of intentional infliction of emotional distress could arise from a marital relationship. *Van Meter* does not suggest that torts other than the intentional infliction of emotional distress pertain to the marital relationship context. No Iowa case has held that the torts of intentional interference with contract or interference with prospec-

tive economic advantage are available in situations arising out of the marital relationship. We believe that the policy expressed in *Fundermann* was designed to limit alienation of affection actions arising out of marital relationships. We do not think this policy would be served by re-packaging alienation of affection suits as other types of torts. We decline plaintiff's invitation to do so. Even if the reasons were not explicitly stated, the trial court did not err in concluding that Kunau could not have prevailed against Miller on the alternate theories stated.

■ Plaintiff next contends that the district court erred in holding that the torts of intentional and negligent infliction of emotional distress are not available in the context of the attorney-client relationship. Defendant asserts that these causes of action were not pleaded by plaintiff and therefore should not be considered on appeal. We think the causes of action were pleaded. The second count of Division II of plaintiff's petition alleged that defendant deliberately, or in reckless disregard of the consequences, acted in such a way as to damage plaintiff's mental health and well-being. In plaintiff's brief, filed in support of his resistance to the first motion for summary judgment, the argument was made and supported that "the plaintiff has alleged what amounts to negligent infliction of emotional distress for the failure of the defendant to utilize every tool allowed by law.... [Defendant's] conduct caused the plaintiff to suffer additional and extended emotional distress." The trial court appears to have ruled that plaintiff did not have a cause of action against the defendant for the intentional or negligent infliction of emotional distress. It is not clear, as plaintiff asserts, that this conclusion stands for the proposition that the torts of intentional and negligent infliction of emotional distress are not available in the attorney-client relationship.

■ We think there is some logic in not excluding the applicability of the tort of intentional or reckless infliction of emotional distress to the attorney-client relationship. The standard for succeeding in a malpractice suit against an attorney based upon the negligent handling of a lawsuit for money damages is proving that the underlying action would have been successful. *Baker v. Beal*, 225 N.W.2d at 109. We believe that when a lawyer's outrageous conduct causes severe emotional distress, the client may have a cause of action against the lawyer even if the underlying case could not have been won. We have already discussed the elements of the tort of the intentional infliction of (or the reckless disregard of the probability of causing) emotional distress. We see no reason not to permit such an action in the attorney-client context. In *Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976), the supreme court held that a mortician could be held liable for his deliberate acts that he knew or was substantially certain would cause emotional distress to the mourning family. We believe that lawyers may not be exempt from the tort of the intentional infliction of severe emotional distress. If a lawyer desires to inflict severe emotional distress and where the lawyer knows such distress is certain, or substantially certain to result from his conduct or where a lawyer acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow, then the lawyer might be held liable for his acts regardless of whether the client would have prevailed in the underlying lawsuit. *See id.* Even assuming the existence of this cause of action, however, we do not think the district court erred in denying plaintiff's claim. The lawyer may have acted negligently; he certainly did not act intentionally or recklessly. The lawyer thought that the posttrial motions were the type of motions which could extend the time for appeal under Iowa Rule of Civil Procedure 179(b). The supreme court ruled that these motions did not extend the time for appeal. *Kunau v. Miller*, 328 N.W.2d at 531. In these circumstances, there is no evidence of either intentional or reckless behavior on the part of the lawyer.

■ We do not agree with plaintiff that we should recognize the tort of negligent infliction of emotional distress in these cir-

cumstances. Our courts generally do not allow recovery for the negligent infliction of emotional distress or mental anguish. *Wambsgans v. Price*, 274 N.W.2d 362, 365 (Iowa 1979). Our courts, as plaintiff points out, have said that a bystander may have a claim for emotional distress caused by witnessing peril to a victim proximately caused by the negligence of another. *Barnhill v. Davis*, 300 N.W.2d 104, 108 (Iowa 1981). We do not accept plaintiff's invitation to find, however, that the lawyer-client relationship is sufficiently analogous to the bystander situation to find that a client can recover damages for emotional or mental stress caused by a lawyer's negligence. The bystander situation involves the sensory and contemporaneous observance of a shocking scene. That is not the circumstance when a client claims that a lawyer's negligent handling of a case caused infliction of emotional distress. We do not believe that our courts have recognized or should recognize a cause of action of negligent infliction of emotional distress arising out of the attorney-client relationship.

■ Plaintiff also claims that the trial court erred in accepting into evidence the depositions of the plaintiff, his wife, and attorney, James Pillers. Kunau contends that this evidence was not necessary or relevant to the testimony of an expert witness called by defendant for the purpose of establishing that defendant had conformed to the applicable standard of care. The trial court allowed the depositions into evidence on the basis that they were being offered to show the foundation upon which the expert was going to base his opinion. Under Rule 703 of the Iowa Rules of Evidence, the underlying factual basis for an expert's opinion need not be previously admitted or even admissible independently of the opinion, if it is of such a nature and type reasonably relied upon by experts in the field. *State v. Galloway*, 275 N.W.2d 736, 739 (Iowa 1979). Under Rule 705 of the Iowa Rules of Evidence, an expert can testify without prior disclosure of the underlying facts or data, unless the court requires otherwise. It is true, therefore, that the depositions were not required to be admitted in order for the expert to testify. We agree that the admission of data not required under 703 or 705 and not admissible under any other rule of evidence may result in making available irrelevant, highly-prejudicial material to the fact finder. However, Iowa Rule of Evidence 103(a)(1) requires that a timely objection must be made, stating the specific ground of the objection, if the ground was not apparent from the context. When a party seeks to exclude evidence, the specific grounds need to be indicated to the trial court. *Carter v. Wiese Corp.*, 360 N.W.2d 122, 132 (Iowa Ct.App.1984). Therefore, when plaintiff made only a "best evidence" objection and did not alert the judge to the ground of any objection as to relevancy or prejudice, the objection is insufficient to provide a basis for review on appeal.

■ Plaintiff also contends the evidence at trial did not support the jury's verdict. A jury's findings are binding on appeal in a law action if supported by substantial evidence. Iowa R.App.P. 14(f)(17); *Bauer v. Curran*, 360 N.W.2d 88, 91 (Iowa 1984). Here, the one issue reserved by the court for trial to the jury was whether or not defendant breached his contract of employment with the plaintiff. The jury heard all the testimony and made its conclusion. Our examination of the record shows there was substantial evidence to support such a finding.

■ Plaintiff finally asserts that the district court erred by instructing the jury that plaintiff could recover for breach of contract no more than the amount of the retainer given to defendant. Given our findings on the issues of damages for emotional distress in this case, we find no error in the jury instruction given. Damages for mental anguish incident to breach of contract are recoverable only in exceptional cases. *Bossuyt v. Osage Farmer's National Bank*, 360 N.W.2d 769, 777–78 (Iowa 1985). This is not one of them.

AFFIRMED.

DONIELSON, J., joins.

SACKETT, DONIELSON and HAYDEN, JJ., specially concur.

OXBERGER, C.J., and SNELL, J., dissent.

SACKETT, Judge (specially concurring).

I concur with the majority.

The Iowa legislature has removed (1) adultery as a crime, and (2) fault from the dissolution statutes. The Iowa Supreme Court has determined alienation of affections is no longer a viable cause of action in Iowa. The result appears to be a trend for the courts not to be judgmental about the sex lives of consenting adults. We are bound to follow the legislative and supreme court dictates.

Viewing the evidence in the light most favorable to plaintiff, the record reflects a married woman somewhat dissatisfied with her own marriage because she claims her husband found her unattractive and was inattentive. She is flattered by advances made by another man, who happens to be her dentist and who she first met in a professional capacity. The dentist and the wife have an affair over a period of three to four years. The wife admits having sex with the dentist an average of once a month, sometimes in her home, his office or a store room. Generally the wife and dentist meet in town but sometimes the wife drives long distances to be with the dentist.

While I cannot personally condone the actions of either Dr. Miller or the plaintiff's wife, that is not the issue. The Iowa courts have *denied* recovery when the consortium is lost because the spouse voluntarily abandons the marital relationship, with the encouragement of a third party. *See Weitl v. Moes*, 311 N.W.2d 259, 266 (Iowa 1981). Spousal love is not property which is subject to theft. *Fundermann v. Mickelson*, 304 N.W.2d 790, 794 (Iowa 1981). We do not abolish the action because defendants in such suits, need or deserve our protection. *Id.* We certainly do not do so because of any changing views of promiscuous sexual conduct. *Id.* It is merely and simply because the plaintiffs in such suits do not deserve to recover for the

loss of or injury to "property" which they do not, and cannot, own. *Id.*

I will not say that the conduct of a male dentist who makes sexual overtures to a married female, who accepts or encourages the overtures and participates in the actions over an extended period, is atrocious and utterly intolerable conduct which goes beyond all bounds of decency that the court should allow the husband of the consenting woman to recover against the dentist. *See Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983).

In this case, the morals of society are more perfectly judged by a court having a final and eternal jurisdiction. *Van Meter v. Van Meter*, 328 N.W.2d 497, 499 (1983) (McCormick, J., dissenting).

DONIELSON and HAYDEN, JJ., join.

SNELL, Judge (dissenting).

I respectfully dissent. The trial court granted summary judgment in defendant's favor holding that as a matter of law the underlying tort claim by plaintiff against Dr. Miller must fail. That claim of intentional infliction of emotional distress requires a finding that the conduct of Dr. Miller was outrageous. *Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108, 118 (Iowa 1984). In ruling on the motion, the court is required to examine the evidence in its light most favorable to plaintiff in determining whether a jury question was engendered. *Poulsen v. Russell*, 300 N.W.2d 289, 296 (Iowa 1981).

Plaintiff claims to be able to prove to a jury that Dr. Miller used his professional relationship as his wife's dentist as a means to effect a seduction of her. He alleges Dr. Miller kissed and fondled her during dental examinations, arranged appointments for her when they would be alone in the office, and ultimately seduced her after delivering medicine to her home. The allegations are that he coerced her to continue the affair and remain silent about it by telling her she and the children would be hurt if they learned of it. Further allegations are that subtle threats occurred by Dr. Miller's claiming he was a police com-

missioner, was connected with the fire department, and was important in various community organizations. Plaintiff claims Dr. Miller met his wife only because of the professional relationship as her dentist and used this relationship to maneuver her into having sexual relations with him.

It is for the court to determine in the first instance whether the relevant conduct may reasonably be regarded as outrageous. *Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983). In making that determination, the court should consider the relationship between the parties:

> The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position or a relation with the other which gives him actual or apparent authority over the other or power to effect his interest.

*Vinson*, 360 N.W.2d at 118.

Plaintiff alleges that the outrageous conduct arises from an abuse by Dr. Miller of his professional position in a doctor-patient relationship. I cannot say, as does the trial court and the majority here, that as a matter of law this conduct is not outrageous. I believe that judgment is for a jury to make as the trier of fact. That the court is to decide, as an initial matter, whether the conduct at issue may reasonably be deemed outrageous is not determinative. Such an observation merely states the question of whether the district court correctly made its determination; it hardly decides it. Our cases adopted the language providing for an initial determination by the court of the conduct's nature from the Restatement (Second) of Torts § 46, comment h (1965). *See Roalson*, 334 N.W.2d at 756. That comment goes on to state that "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Reasonable members of a jury could find that Dr. Miller's conduct as a professional person went beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. *See Vinson*, 360 N.W.2d at 119. I

would reverse and remand for retrial of the plaintiff's case that pertains to the underlying tort of intentional infliction of emotional distress and for trial on the elements comprising that tort.

OXBERGER, C.J., joins this dissent.