# IN THE COURT OF APPEALS OF IOWA

No. 14-2054
Filed December 23, 2015

**PAM CUMMINGS, Administrator of the**
**Estate of C.H.,**
    Plaintiff-Appellant,

**vs.**

**THE STATE OF IOWA,**
    Defendant-Appellee

_____

**PAM CUMMINGS, as Next Friend of**
**D.C., formally D.H., a Minor,**
    Plaintiff-Appellant,

**vs.**

**THE STATE OF IOWA,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Jackson County, Mark R. Lawson,

Judge.

    Pam Cummings, as the administrator of the estate of C.H., appeals from

the district court's grant of summary judgment. **AFFIRMED.**


    Mark E. Liabo of Currie & Liabo Law Firm, P.L.C., Cedar Rapids, and

Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

    Thomas J. Miller, Attorney General, and Joanne Moeller, Assistant

Attorney General, for appellee.


    Considered by Doyle, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Pam Cummings, as the administrator of the estate of C.H., appeals from the district court's grant of summary judgment finding Cummings failed to state a claim upon which relief could be granted and the discretionary function exception to the waiver of the State's liability barred her claim. We affirm.

## I.    BACKGROUND FACTS AND PROCEEDINGS

The parties do not contest the factual background; therefore we adopt the district court's recitation:

> D.H. (born in 2003) and C.H. (born in 2005) were brothers. Their mother was a drug addict who was in and out of prison. She initially placed first D.H., and later C.H., with her brother and his wife, Andy and Danielle . . . . Later, when her parental rights to the children were terminated in separate proceedings, the children were placed with [Andy and Danielle] under the auspices of the Iowa Department of Human Services ("DHS"). DHS retained guardianship of the children until they were adopted by [Andy and Danielle]. D.H. was adopted December 12, 2006; C.H. was adopted August 10, 2007. In addition to these two children, [Andy and Danielle] had three children of their own.
>
> In April 2007—prior to the adoptions—DHS received a report that D.H. had been spanked with a belt for wetting his pants. The allegations of physical abuse were investigated by a DHS child protective worker but were not confirmed.
>
> Within a month of C.H.'s adoption, there was a second report of child abuse regarding D.H. The child protective worker noted various bruises; particularly bruising and linear marks around the child's waist. Because the worker observed an injury but could not determine a cause, the allegations were not confirmed.
>
> In August 2008, a third report of child abuse was made. The report specifically accused Danielle of using methamphetamine while caring for her children. This time, a child protective worker founded a denial of critical care. Danielle was ordered to remain out of the home for approximately two weeks. DHS provided services to the family, including in-home supervision and substance abuse treatment for Danielle. The case remained open for eleven months. During this time, DHS became aware of allegations of domestic abuse by Andy towards Danielle and Danielle's

hospitalization for cutting herself and punching a wall. She was diagnosed with schizophrenia.

At all times, DHS workers and supervisors were aware that the children of parents who use methamphetamine are at greater risk of being abused. Although Danielle initially lied about her methamphetamine use, she ultimately admitted to using following a positive drug test. Upon her successful completion of treatment for substance abuse, the case was closed on July 31, 2009. DHS had no further contact with the family until the following summer.

On June 12, 2010, C.H. was drowned in a bathtub by Danielle. He was four years of age. The surviving children were removed from the home and placed in the custody of DHS. A child abuse assessment was initiated. Following a lengthy investigation, it was determined that D.H. and C.H. had suffered severe physical and mental abuse in [Andy and Danielle's] home, including beatings, burnings, choking, confinement, withholding of food, verbal and psychological abuse, and submersion in cold bath water as punishment.

Andy and Danielle were arrested and charged with murder in the first degree and child endangerment. Andy died prior to trial. Danielle pleaded guilty to child endangerment resulting in death and is serving a prison term.

Cummings is the administrator of C.H.'s estate and is also the adoptive parent of D.H. (now D.C.). Cummings filed a tort claim with the State of Iowa Appeal Board on behalf of C.H.'s estate claiming DHS caseworkers were negligent in failing to properly investigate the abuse, protect the safety of C.H., and remove him from the abusive home. She filed a similar claim on behalf of D.H. Following the denial of both claims by the appeal board, Cummings filed separate lawsuits containing similar allegations. The district court consolidated the two lawsuits.

In its answer, the State of Iowa denied liability and raised the affirmative defense Cummings had failed to state a claim upon which relief could be granted, the suit was barred by sovereign immunity under the Iowa Tort Claim Act (ITCA), and it was barred by the applicable statute of limitations. In August,

2014, the State filed a motion for summary judgment raising the same defenses. Cummings resisted.

In November 2014, the district court granted the State's motion finding Cummings had failed to state a claim upon which relief could be granted and the State was immune from liability pursuant to the discretionary function immunity exception. The court denied the State's motion on the statute of limitations grounds.

Cummings now appeals from the grant of summary judgment.

## II. STANDARD OF REVIEW

We review rulings on motions for summary judgment for the correction of errors at law. *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005). "Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). A genuine issue of material fact exists if reasonable minds can differ on how an issue should be resolved. *Seneca Waste Solutions, Inc. v. Sheaffer Mfg. Co.*, 791 N.W.2d 407, 411 (Iowa 2010). We examine the record in the light most favorable to the nonmoving party and draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact. *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005). "A party resisting a motion for summary judgment cannot rely on the mere assertions in [her] pleadings but must come forward with evidence to

demonstrate that a genuine issue of fact is presented." *Stevens*, 728 N.W.2d at 827.

## III.   MERITS

### A.   Failure to State a Claim

"The Iowa Tort Claims Act prescribes procedures governing tort claims against the State for the negligent acts of its officers, agents, or employees." *See generally* Iowa Code ch. 669 (2013); *Schneider v. State*, 789 N.W.2d 138, 146 (Iowa 2010).   The ITCA preserves aspects of sovereign immunity by excluding certain claims from its scope.   *See Schneider*, 789 N.W.2d at 146. "While the ITCA does not create a cause of action, it 'recognizes and provides a remedy for a cause of action already existing which would have otherwise been without remedy because of common law immunity.'"   *Minor v. State*, 819 N.W.2d 383, 405 (Iowa 2012).

Cummings claims the State was negligent in investigating the reports of child abuse and, consequently, by failing to protect D.H. and C.H. from abuse. Cummings asks us to revisit the holdings in *Rittscher v. State*, 352 N.W.2d 247 (Iowa 1984) and *Callahan v. State*, 385 N.W.2d 533 (Iowa 1986), and find the State can be held liable (pursuant to recent holdings applying the Restatement (Third) of Torts[1]) when its social workers fail to prevent children from being abused by their parents or legal guardians.

---

[1] *See, e.g., Thompson v. Kaczinski*, 774 N.W.2d 829, 836 (Iowa 2009) (adopting Restatement (Third) of Torts Liability for Physical Harm).

In *Rittscher*, our supreme court declined to find the State liable for allowing a minor to remain in the care of her mother and by not placing the minor in foster care. 352 N.W.2d at 252. Specifically, the minor (now an adult), claimed the State had a duty to provide for her welfare under the doctrine of parens patriae[2] and the State is liable pursuant to the applicable statutes. *Id.* at 250. In declining to find the State liable, our supreme court refused to recognize a tort action for the State's failure to act as parens patriae—under the specific facts presented in the case. *Id.* at 251.

Similarly, in *Callahan*, our supreme court declined to find the State liable, pursuant to a common law or statutory duty, for negligently delaying the removal of three minor children from an inadequate home. 385 N.W.2d at 540. The three children were subjected to extensive sexual abuse by their mother and her boyfriend. *Id.* at 534. The court found *Rittscher* applicable and reasoned:

> Our holding in *Rittscher* encompassed the principle that the State's responsibility to care for its citizens, including protecting a child from his or her parent, does not give rise to tort liability when social service personnel negligently fail to take steps to remove a child from an inadequate parental home. 352 N.W.2d at 251. We believe plaintiffs' claim in this case is substantially the same as a claim arising from the State's failure to protect a child from his or her parent. Plaintiffs do not present a cause of action that is an exception to the *Rittscher* principle.
> . . . .
> A state agency and its employees would be placed in a rather precarious situation if they could be held liable for a failure to remove a child from the home of his or her parents. On one hand, the purpose of these statutes is to protect children from child abuse, which includes protection from an abusing parent. Iowa Code § 232.67. On the other hand, the department has to use

---

[2] "Because the State, as parens patriae, has the duty to assure that every child within its borders receives proper care and treatment, it must intercede when parents abdicate that responsibility." *In Re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

reasonable efforts to help prevent or eliminate the need for removing the child from his or her home. *Id.* If the department determines the best interest of the child requires juvenile court action, it shall initiate such action. § 232.71(9) (1983). Even after the dispositional hearing, the juvenile court shall, whenever possible, permit the child to remain at home with the child's parent. § 232.102(3). Consequently, the department and its employees receive divergent instructions—to protect the child but make a reasonable effort to keep him or her in the home. Such a decision requires department employees to engage in a delicate balancing of interests. Of course, the best interest of the child is the overriding concern. § 232.1.

*Id.* at 536–37.

The district court relied on *Rittscher* and *Callanan* in granting the State's motion for summary judgment. The district court concluded:

> The Court concludes that the supreme court's failure to recognize the tort of social services malpractice in *Rittscher* and *Callahan* is precisely the type of exceptional case in which "an articulated countervailing principle or policy warrants denying or limiting liability . . . ." [*Thompson*, 774 N.W.2d] at 835. If the liability of social workers and DHS for damages based upon negligence is to be expanded in light of *Thompson* [(adopting Restatement (Third) of Torts Liability for Physical Harm §7(a))], thereby overruling *Rittscher* and *Callahan*, this decision should be made by our supreme court.
>
> In summary, both stare decisis and public policy dictate the result. The plaintiff's petition fails to state a claim under existing precedents. The State's motion for summary judgment is granted on this ground.

Cummings admits *Rittscher* and *Callanan* have not been overruled by the Iowa Supreme Court or abrogated by legislative act. Cummings urges us to revisit and (ostensibly) overrule this precedent. Because this court's role is to apply existing legal principals, we decline Cumming's request to extend the doctrine. *See* Iowa R. App. P. 6.1101(3). Holding otherwise would contravene our supreme court's long-standing application of the *Rittscher* principle. *See*

*Healy v. Carr*, 449 N.W.2d 883, 885 (Iowa Ct. App. 1989) (recognizing our supreme court's statement that "[i]f our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves"). We find the district court did not err in granting the State's motion for summary judgment for Cumming's failure to state a claim.

Since the above issue is dispositive of this appeal, we decline to reach the discretionary function immunity issue.

**AFFIRMED.**