Robert C. BARNHILL, Appellant,

v.

Rose Marie DAVIS and James A. Davis, Appellees.

No. 64492.

Supreme Court of Iowa.

Jan. 14, 1981.

James W. Carney and James S. Blackburn of Carney, Hudson, Williams & Green, Des Moines, for appellant.

Thomas J. Logan of Hopkins & Huebner, Des Moines, for appellees.

McGIVERIN, Justice.

When, if ever, should a bystander be able to recover for emotional distress resulting from witnessing the negligent infliction of harm on another person? The trial court sustained defendants' motion for summary judgment, resulting in dismissal of plaintiff-bystander's petition. We reverse.

I. *Background.* In reviewing the trial court's grant of summary judgment, we view the facts in the entire record in the light most favorable to the party opposing the motion. *Tasco, Inc. v. Winkel*, 281 N.W.2d 280, 282 (Iowa 1979). Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c).

The record, consisting of the pleadings, answers to interrogatories, a deposition, exhibits and an affidavit, discloses the following facts exist without substantial controversy. On June 12, 1978, plaintiff Robert C. Barnhill was driving his car in West Des Moines. He was being followed by his mother, Grace Maring, who was driving her car. Barnhill stopped at an intersection and then proceeded safely through it. He pulled over to the side, about three car lengths from the intersection, to wait for his mother. When Maring tried to drive through the intersection, her car was struck on the driver's side by a car driven by defendant Rose Marie Davis and owned by defendant James A. Davis.

As a result of the accident, Maring was slightly bruised. She was examined by doctors shortly after the accident and also approximately six weeks later. The first examination disclosed a bruised rib cage and mild muscle strain. The second examination report stated "she did not claim or present any evidence of physical injury from the accident." Barnhill claims that he has suffered emotional distress because of his fear for his mother's safety. He contends the emotional distress has caused pain in his back and legs, dizziness, and difficulty in sleeping.

Divisions I and II of the petition were claims by Barnhill for damages for emotional distress. Maring also claimed damages but later voluntarily dismissed her portion of the petition with prejudice.

Defendants moved under Iowa R.Civ.P. 104(b) to dismiss Barnhill's petition for failure to state a claim upon which relief may be granted. The court denied the motion. Defendants, after discovery, moved under Iowa R.Civ.P. 237 for summary judgment on the grounds that a bystander, who is not involved in an accident, cannot recover as a matter of law for emotional distress from the harm to a third person caused by a defendant's negligence. The court granted the motion for the reasons urged.

Barnhill appeals from the grant of summary judgment against him. Davises cross-appeal from the denial of their motion to dismiss.

We are initially presented with the question of whether a bystander, who is not in any physical danger, may recover in Iowa for emotional distress and its consequences resulting from fear for the safety of another person caused by the defendant's negligence. We conclude that the bystander

should be able to maintain such a claim under certain circumstances. Because we believe plaintiff has generated a genuine issue of material fact on the elements of this tort, defendants' motion for summary judgment should have been overruled. Therefore, we reverse on the appeal and affirm on the cross-appeal.

This court has not previously decided the issue presented by this appeal. We said in *Wambsgans v. Price*, 274 N.W.2d 362, 365 (Iowa 1979), "While we do not adhere to the impact rule which requires a physical injury in order to recover for emotional distress or mental anguish, we have never allowed such a recovery for negligence alone." We have also noted, "[W]here the act is willful or malicious, as distinguished from being merely negligent, recovery may be had for mental pain, though no physical injury results." *Barnett v. Collection Service Co.*, 214 Iowa 1303, 1312, 242 N.W. 25, 28 (1932).

Prior to 1968, most jurisdictions denied recovery for mental disturbance from witnessing the peril of another. W. Prosser, *The Law of Torts* § 54 (4th ed. 1971). In 1968 California decided that a mother, who was not herself in any physical danger, could recover for mental distress and its consequences from witnessing a defendant negligently drive a car into and kill her child. *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968). We find much of the *Dillon* court's rationale helpful in deciding this case.

II.  *Whether to allow bystander recovery.*  Defendants do not seriously contend that a bystander should never be able to recover for emotional distress from witnessing the peril of a third party caused by negligence of another person. Rather, they argue that only bystanders who, unlike Barnhill, are physically endangered by the defendant's negligence should be allowed to recover. Nevertheless, we will briefly review, and put to rest, traditional arguments for denying bystander recovery before considering the scope of this claim for damages.

The first argument against allowing bystander recovery for mental distress at the peril of another is that the door will be open to a flood of litigation. We find this unpersuasive. If, as we conclude, a bystander has an interest in mental tranquillity that the law of torts should protect in certain carefully delineated cases, the burden on the courts in protecting that interest should not result in a wholesale denial of the claim. *Dillon*, 68 Cal.2d at 735, 441 P.2d at 917, 69 Cal.Rptr. at 77; *Toms v. McConnell*, 45 Mich.App. 647, 656, 207 N.W.2d 140, 145 (1973); *Tobin v. Grossman*, 24 N.Y.2d 609, 615, 249 N.E.2d 419, 422, 301 N.Y.S.2d 554, 558–59 (1969); *Sinn v. Burd*, 486 Pa. 146, 163, 404 A.2d 672, 680–81 (1979).

Another argument against allowing bystander recovery is that fraudulent claims might successfully be asserted. While the possibility of fraud is of concern, it does not require a wholesale rejection of all claims by bystanders. Legitimate claims of bystanders should be allowed. The responsibility of weeding out fraudulent claims on a case-by-case basis rests on courts, juries and the adversary system. *Dillon*, 68 Cal.2d 737, 441 P.2d at 918, 69 Cal.Rptr. at 78; *Dziokonski v. Babineau*, 375 Mass. 555, 566, 380 N.E.2d 1295, 1301 (1978); *Tobin*, 24 N.Y.2d at 616, 249 N.E.2d at 422, 301 N.Y.S.2d at 559.

Finally, there is the problem of defining limits to the liability to bystanders. Devising one specific rule to cover recovery in bystander cases under a myriad of factual patterns is impossible. The case-by-case approach of the common law is best suited to refine the rules. *Dillon*, 68 Cal.2d at 740, 441 P.2d at 920, 69 Cal.Rptr. at 80; *Toms*, 45 Mich.App. at 655, 207 N.W.2d at 144. For now, we develop general guidelines for a bystander claim in Iowa and confine ourselves to the facts of this case.

■  III.  *When to allow bystander recovery.*  A defendant who acts negligently is only liable for injuries to others that are reasonably foreseeable. *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928); *Dillon*, 68 Cal.2d at 739, 441 P.2d at 919, 69 Cal.Rptr. at 79; 2 F. Harper & F. James, *The Law of Torts* § 18.2 (1956). The question is what an

ordinary person should reasonably foresee as the consequences of the negligent act.

It is foreseeable that if a person negligently runs over a young child, a parent may be somewhere nearby and will suffer serious mental distress at witnessing the accident. Despite our willingness to allow recovery in that situation, it is equally obvious that there must be some end to the liability for a person's negligent acts. "It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends." W. Prosser, *supra* at 334.

In determining whether a bystander's emotional distress is reasonably foreseeable, we believe a court should consider (1) whether the bystander "was located near the scene of the accident," (2) whether the emotional distress "resulted from a direct emotional impact ... from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence" and (3) whether the bystander and "the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Dillon*, 68 Cal.2d at 740–41, 441 P.2d at 920, 69 Cal.Rptr. at 80. Applying these criteria on a case-by-case basis will assist in delineating what is reasonably foreseeable.

We note that we are not requiring that the bystander be in the zone of physical danger of the defendant's negligent act. The Restatement (Second) of Torts does require that the bystander actually be in danger of bodily harm before a claim may be stated for negligent infliction of emotional distress. Restatement (Second) of Torts §§ 313, comment (d), 436, comment (f). Some jurisdictions require that the bystander be in the zone of physical danger presumably to provide clear limits on the liability to the bystander. *Keck v. Jackson*, 122 Ariz. 114, 116, 593 P.2d 668, 671 (1979);

*Stadler v. Cross*, Minn., 295 N.W.2d 552, 555 (1980); *Whetham v. Bismarck Hospital*, 197 N.W.2d 678, 684 (N.D.1972); *Guilmette v. Alexander*, 128 Vt. 116, 119, 259 A.2d 12, 14 (1969).

While we recognize that the Restatement and other jurisdictions use the zone of physical danger test, we think that the better rule is to allow recovery even where the bystander is not in danger of bodily harm. It is foreseeable that a bystander may be emotionally distressed even though not himself in any physical danger. We reject the harshness and artificiality of the zone of physical danger test. *Leong v. Takasaki*, 55 Haw. 398, 405, 520 P.2d 758, 763, 94 A.L. R.3d 471, 478 (1978); *Dziokonski*, 375 Mass. at 564, 380 N.E.2d at 1300 ("Although zone of danger rule ... provides a means of limiting ... liability, it lacks strong logical support"); *Toms*, 45 Mich.App. at 653, 207 N.W.2d at 144 (noting "hopeless artificiality and harshness of the zone-of-danger rule"); *Corso v. Merrill*, 119 N.H. 647, ——, 406 A.2d 300, 307 (1979) ("the zone of danger rule imposes unjust limitations on recovery and fails to protect worthy interests"); *Portee v. Jaffee*, 84 N.J. 88, 96, 417 A.2d 521, 525 (1980); *Sinn*, 486 Pa. at 157, 404 A.2d at 683; *D'Ambra v. United States*, 114 R.I. 643, 657, 338 A.2d 524, 531 (1975) (to apply zone of danger to cases where parent witnesses death of child would "deny psychological reality"); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Ct.App.1978).

In addition to generally deciding when mental distress is reasonably foreseeable, it is necessary to ensure that the bystander's claim is serious and has some guarantee of genuineness. As our society becomes more complex, it would be impossible for the law to compensate for every minor disturbance to a person's mental tranquillity. To be compensable, the mental distress must be serious. *D'Ambra*, 114 R.I. at 653, 338 A.2d at 529 (law should not compensate "every minor psychic shock"). While we recognize that mental distress may exist without objective physical symptoms, compensable mental distress should ordinarily be accompanied with physical manifestations of the

distress. *Keck*, 122 Ariz. at 115, 593 P.2d at 669; *Dziokonski*, 375 Mass. at 568, 380 N.E.2d at 1302; *Corso*, 119 N.H. at ——, 406 A.2d at 304; *Hunsley v. Giard*, 87 Wash.2d 424, 436, 553 P.2d 1096, 1103 (1976); W. Prosser, *supra. Contra, Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 616 P.2d 813, 167 Cal.Rptr. 831 (1980) (where tortious conduct directed toward plaintiff, no physical injury from emotional distress required); *Leong*, 55 Haw. at 413, 520 P.2d at 762 (requiring physical injury from mental distress is "artificial" and should only be used to establish the degree of mental distress).

In addition, a reasonable person in the position of the bystander must at least have reason to believe, and the bystander must believe, that the direct victim of the accident would be seriously injured or killed before we will recognize the bystander's claim for emotional distress. Most of the cases cited in this division involved either death or serious injury to the direct victim of the defendant's negligence.

Section 702.18, The Code 1979, in the context of criminal law, states in part:

"Serious injury" means . . . bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

We adopt that definition here to assist in defining the type of injury the direct victim might sustain.

■ In summary, the elements of a bystander's claim in Iowa for emotional distress caused by witnessing peril to a victim proximately caused by the negligence of another are that:

1. The bystander was located near the scene of the accident.

2. The emotional distress resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

3. The bystander and the victim were husband and wife or related within the second degree of consanguinity or affinity.

4. A reasonable person in the position of the bystander would believe, and the bystander did believe, that the direct victim of the accident would be seriously injured or killed.

5. The emotional distress to the bystander must be serious.

■ IV. *Barnhill's claim.* In determining whether defendants' motion for summary judgment was correctly sustained against Barnhill, we apply the principles stated above to the facts of this case. We conclude that Barnhill has met the general foreseeability requirements of the first three elements set out above. He saw the accident from his car, which was located near the scene. The victim of the accident, Mrs. Maring, was his mother. It is reasonably foreseeable that a son, who witnesses serious injury to his mother, may suffer mental distress.

On the fourth element, we conclude Barnhill has at least minimally generated a genuine issue of material fact on whether a reasonable person would believe, and Barnhill did believe, that Maring, the direct victim, would be seriously injured or killed by the accident.

To satisfy the fifth element, Barnhill has alleged that his distress has manifested itself physically. In his petition, and in answer to interrogatories, Barnhill claims, and his doctor confirms, that as a result of witnessing the accident he has experienced dizziness and pain in his legs and back.

We hold the court should not have sustained defendants' motion for summary judgment.

The case is reversed on plaintiff's appeal and affirmed on defendants' cross-appeal. We return the case to district court for further proceedings.

REVERSED ON THE APPEAL; CROSS–APPEAL AFFIRMED.

All justices concur except ALLBEE and LeGRAND, JJ., who dissent.

ALLBEE, Justice (dissenting).

Until today a damage action for the emotional distress of an unendangered bystander who witnessed the negligent infliction of harm on another person was not recognized as a tort in this state. I am unwilling to join the court in its embracing of this beguiling concept. It is complex, fraught with problems and difficult to administer, as is conceded by even its most ardent supporters. *E.g.,* W. Prosser, *The Law of Torts,* § 54 at 328–30, 333–35 (4th ed. 1971). Substantial factors militating against the cause of action include the remoteness of emotional distress from the negligent act, the fictional duty of one person to prevent another from being frightened by what he may by chance observe, the problem of the foreseeability of who may be distressed by an act, the nearly limitless possibilities for liability as well as the potential for fraudulent, collusive and nuisance claims. There is no point, however, in belaboring these concerns as they already have been the subject of considerable discussion by respectable authority. *See, e.g., Dillon v. Legg,* 68 Cal.2d 728, 748–52, 69 Cal.Rptr. 72, 85–88, 441 P.2d 912, 925–28 (1968) (Burke, J., dissenting); *Stadler v. Cross,* 295 N.W.2d 552, 553–55 (Minn.1980); *Tobin v. Grossman,* 24 N.Y.2d 609, 613–19, 301 N.Y.S.2d 554, 556–62, 249 N.E.2d 419, 421–24 (1969); *Whetham v. Bismarck Hospital,* 197 N.W.2d 678, 680–85 (N.D.1972); *Shelton v. Russell Pipe and Foundry Co.,* 570 S.W.2d 861, 862–66 (Tenn.1978); *Grimsby v. Samson,* 85 Wash.2d 52, 55–57, 530 P.2d 291, 293–94 (1975). But neither these authorities nor I have succeeded in dissuading this court. Thus, I now simply record that I am not a party to the opening of this "Pandora's box."

LeGRAND, J., joins in this dissent.