Kristine D. **ROBERTS**, Plaintiff,

Nancy A. Roberts, Appellant,

v.

Dale **BRUNS**, Beverly Bruns and Pioneer Hi-Bred International, Inc., Appellees,

Willow Run Country Club, Inc., Defendant.

No. 84–1993.

Supreme Court of Iowa.

May 21, 1986.

Rehearing Denied June 13, 1986.

present rules of notice pleading.

Timothy M. Sweet, Reinbeck, for appellant.

C.A. Frerichs, Waterloo, for appellees Dale Bruns and Beverly Bruns.

Frank A. Comito and George S. Eichhorn, Des Moines, for appellee Pioneer Hi-Bred Intern., Inc.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, CARTER, and LAVORATO, JJ.

CARTER, Justice.

The appellant in this proceeding is Nancy A. Roberts, one of the plaintiffs in the district court. Nancy A. Roberts is the mother of Kristine D. Roberts, the other plaintiff in the action. Kristine was the victim of a hit-and-run accident on June 19, 1981, in which a motorcycle she was operating was allegedly struck by an automobile driven by appellee, Dale Bruns, one of the defendants in the action.

■ The petition of Kristine and Nancy alleges that Bruns and the other defendants participated in a scheme whereby the identity of Bruns as the person causing injury and disability to Kristine was concealed from the plaintiffs and from law enforcement officials for more than two years. Kristine seeks to recover actual and punitive damages from defendants for injuries sustained in the June 19, 1981 accident and from the conspiracy to cover up Bruns involvement therein. Nancy seeks recovery for the infliction of severe emotional distress which she claims was visited upon her from the conspiracy to cover up the incident.[1]

In addition to her claims against Bruns and those persons and entities allegedly conspiring with him in concealing his involvement in the accident, Nancy sought to recover for emotional distress against defendant, Willow Run Country Club, Inc. (Willow Run), on the ground that it had served Bruns alcoholic beverages to the point where he became intoxicated immediately prior to the collision in which Kristine was injured. She claims this act by Willow Run caused her severe emotional distress.

Willow Run filed a motion to dismiss Nancy's emotional distress claims on the ground that she was not present at the time and place of the injuries sustained by Kristine and was therefore not entitled to recover for emotional distress as a "bystander" under our holding in *Barnhill v. Davis*, 300 N.W.2d 104, 108 (Iowa 1981). This motion to dismiss was granted by the district court. Following the court's ruling, the other defendants filed motions for summary judgment with respect to Nancy's emotional distress claims against them incorporating by reference the grounds of Willow Run's motion to dismiss.

In resistance to the motions for summary judgment, Nancy A. Roberts filed the affidavits of herself and her daughter, Kristine. Nancy's affidavit recites the following facts:

I ... state that I am the mother of Plaintiff Kristine D. Roberts and that following the hit-and-run accident on June 19, 1981 in which she was injured, I provided considerable care and financial assistance for her.

---

1. Nancy also sought recovery for loss of services and companionship of her daughter. These claims were dismissed by the district court on the ground that recovery for such items is limited by Iowa R.Civ.P. 8 which does not permit such recovery in regard to an adult child. No appeal was taken from that determination, and we therefore give the issue no consideration in this opinion.

As a result of the accident Kristine was totally disabled for a period of time and left with no independent means of support. It was necessary for me to take care of her and pay for her living expenses. Initially upon her return from the hospital she lived in my home for a period of time. As reflected in her medical records, she was incapacitated and in a body cast for a lengthy period of time. It was very difficult for me to take care of her. My husband (Kristine's father) died in 1979, and being a widow, my financial resources have been very limited.

Because this was a hit-and-run accident and the identity of the hit-and-run driver was successfully covered up for a number of years, neither my daughter nor I were able to seek reimbursement from the perpetrators for expenses of her medical treatment and her care and maintenance.

Further, both my daughter and I suffered extreme emotional distress and anguish over the hit-and-run conduct and coverup. My daughter's disability was a constant reminder that the hit-and-run driver had fled and didn't consider my daughter important enough as a human being to stop and render assistance. It caused me great emotional distress and anxiety to know that the driver had gotten away without having to pay anything for the injuries he caused to my daughter and the expense he had caused to me.

As a result of this distress and anxiety, I suffered severe medical problems of my own. In July of 1981 I developed severe ulcers which were directly related to the stress brought on by the hit-and-run coverup. Since then, I have been hospitalized eight times and have undergone 4 surgeries for this problem. This has caused me to lose 40 pounds in body weight since the accident. I have sizable medical bills and I have suffered great pain and discomfort with this condition.

Kristine's affidavit sets forth the following facts:

During the early morning hours of July 19, 1981, I was driving my motorcycle eastbound on Airline Highway when I was involved in an accident. The accident occurred at the entrance of the Petersen Seed Division Plant of Pioneer Hi-Bred International, Inc. in Waterloo, Iowa. As a result of the accident, I had severe multiple injuries and fractures, including a skull fracture, and I was rendered unconscious. Because of my injuries and the shock, I experienced amnesia of the event and I have been unable to recall any of the details of the accident.

. . . .

My mother, Nancy A. Roberts, and I waited for the results of the police investigation but they were unable to find any information concerning the identity or whereabouts of the hit-and-run driver. On August 18, 1981, we hired our present attorney, Timothy M. Sweet, to investigate the case. The attorney was unable to discover any more information than the police already knew. I was unemployed at the time and neither I nor my mother had enough money to hire the services of a private investigator. Since we could not discover the identity of the hit-and-run driver, we of course could not discover the identity of the driver's insurance carriers.

My mother and I first became aware of the identity of Mr. Bruns as the hit-and-run driver on August 22, 1983. I know that this occurred about the same time that this information became known to the Waterloo police. At first, we were just told of the name of Dale Bruns and of his position with Pioneer, but we were not told of his exact place of residence. It was later discovered through conversations between our attorney and police officers that Mr. Bruns was residing on Mesa Verde Drive in Lincoln, Nebraska.

During late August and in September, 1983, our attorney investigated Mr. Bruns' involvement in the accident and the coverup of his involvement by others employed at the Petersen Seed Division of Pioneer. We learned that criminal

charges were being filed against Mr. Bruns for leaving the scene of the accident and failing to report the accident, and that the County Attorney's office would attempt to extradite Mr. Bruns for trial on those criminal charges. We then discussed with our attorney where suit should be brought, and we decided that we should bring the lawsuit in Iowa.

I incurred substantial charges for medical treatment by doctors and hospitals. Because of my lack of funds, I was forced to utilize the services of the indigent patient care program (state papers) for some of my hospitalization at the University of Iowa. Despite this, I still owe some very substantial bills for much of my medical treatment.

■ The district court granted the motions for summary judgment, and, in so doing, recited the following reasons:

[T]he petition seeks damages on behalf of Nancy A. Roberts, mother of the person injured in the incident giving rise to the cause of action. This division [is] based on the legal theory of emotional distress, which was recognized by the Iowa Supreme Court in *Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981). The Iowa Court has required the elements of geographical nearness and contemporaneous perception to sustain the cause of action. This Court concludes that ... plaintiff's petition does not set forth a cause of action recognized under the facts of this case ....

Nancy has appealed from this order of the district court granting defendants' summary judgment motions.

Nancy urges on appeal that the allegations of her petition state a claim for infliction of emotional distress caused by actionable omissions of the defendants occurring subsequent to the June 19, 1981 accident. She contends that the district court therefore erred in only considering Bruns' conduct on that date for purposes of determining the applicability of the "bystander" requirement of *Barnhill*. In response to this argument, the defendants urge that, in our recent decision in *H.L.O. v. Hossle*, 381

N.W.2d 641, 644–45 (Iowa 1986), we determined that policies derived in negligence cases such as *Barnhill* and *Oberreuter v. Orion Industries*, 342 N.W.2d 492, 494 (Iowa 1984) have application in cases involving intentional infliction of emotional distress. In the latter case, we applied section 46(2)(a) of the Restatement (Second) of Torts (1965) which states that, "[w]here such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress ... to a member of such person's immediate family who is present at the time."

Nancy contends that she satisfies the requirement of being "present at the time," in the present case because defendants' torts (failure to report a personal injury accident and conspiracy to obstruct justice) were continuing in nature, had a continuing impact on Kristine, and Nancy maintained a "percipient presence" during much of her daughter's ordeal. In support of her contentions, she cites *Ochoa v. Superior Court of Santa Clara County*, 39 Cal.3d 159, 703 P.2d 1, 216 Cal.Rptr. 661 (1985) where recovery was permitted to a mother who witnessed the effect of the ongoing failure of juvenile detention authorities to give her son adequate medical treatment.

Although Nancy's claims are appealing, we believe that the district court was correct in concluding her petition fails to state a claim upon which relief can be granted for mental suffering or emotional distress caused by defendants' conduct. The issue presented is one of legal causation, *i.e.*, whether the policy of the law will extend responsibility to those consequences which have in fact been produced by a particular event. *Schreckengast v. Hammermills, Inc.*, 369 N.W.2d 809, 810 n. 2 (Iowa 1985). It is simply too difficult to separate the continuing consequences of defendants' tort from the continuing effects of Kristine's lingering injuries in order to predicate a claim on the former which is clearly not allowable by reason of the latter.

The *Ochoa* decision is distinguishable. The parent of the juvenile in that case was

present with and had access to her son within the correctional institution which was denying him adequate medical care during a material portion of the time involved. Officials of the correctional facility were cognizant of her presence and concern. In the present case, there is no indication that the defendants were cognizant of either Nancy's presence or concern, circumstances which have traditionally been considered to be essential elements of third-party claims for emotional distress. *See* W. Prosser & W.P. Keeton, *Law of Torts* § 12, at 65–66 (5th ed. 1984). We have considered all claims and arguments presented and conclude that the judgment of the district court should be affirmed.

AFFIRMED.