**Cheryl K. CHESTER, Personally and as Administrator of the Estate of Kevin B. Chester, Plaintiff,**

v.

**MUSTANG MANUFACTURING COMPANY, INC., Defendant.**

**No. C97–3011–MWB.**

United States District Court, N.D. Iowa, Central Division.

March 17, 1998.

Oral Arguments by Thomas L. Staack and Chad A. Swanson of Dutton, Braun, Staack & Hellman P.L.C., Waterloo, IA, for Plaintiff.

A. Roger Witke of Whitfield & Eddy, P.L.C., Des Moines, IA, for Defendant.

## ORDER REGARDING DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ....................................... 1041
II. FINDINGS OF FACT .................................................. 1041
    A. Uncontested Facts .............................................. 1041
    B. Contested Facts ................................................ 1042

III. LEGAL ANALYSIS ................................................... 1043
    A. Standards For Summary Judgment .................................. 1043
    B. Pain And Suffering Damages ...................................... 1043
    C. Chester's Bystander Liability Claim ............................. 1044
        1. General principles of bystander liability ................... 1044

  2. *Application of contemporaneous perception prong* .................... 1045

IV. *CONCLUSION* ............................................... 1050

A tragic farm accident forms the backdrop for this lawsuit. The court is called upon by defendant's motions for partial summary judgment to determine the macabre question of whether a genuine issue of material fact has been generated regarding the nature of the decedent's fatal injuries. Specifically, the court must ascertain whether a genuine issue of material fact exists concerning the question of whether, as a result of the accident, the decedent's death or unconsciousness was instantaneous. Assuming that plaintiff is able to generate a genuine issue of material fact that the accident was still ongoing at the time of her arrival at the scene, the court is further called upon to determine whether the Iowa Supreme Court would recognize a claim for negligent infliction of emotional distress by a bystander where the individual is not present at the time an incident commences but arrives while it was still ongoing.[1]

## I. INTRODUCTION AND BACKGROUND

Plaintiff Cheryl K. Chester, personally and as the administrator of the estate of Kevin B. Chester, filed her complaint in this action on February 7, 1997, against defendant Mustang Manufacturing Company, Inc. ("Mustang"). Subject matter jurisdiction is based on diversity of citizenship and sufficient amount in controversy. *See* 28 U.S.C. § 1332. Cheryl Chester alleges that her husband, Kevin B. Chester, suffered fatal injuries when the bucket on a skid loader unexpectedly dropped, pinning Kevin between the bucket and the skid loader's frame. Cheryl Chester alleges claims for strict liability, negligence, implied warranty, and bystander liability.

Mustang filed a motion for partial summary judgment on December 18, 1997, seeking dismissal of Cheryl Chester's bystander liability claim on the ground that Cheryl

Chester cannot establish a viable cause of action for emotional distress under Iowa law because she was not present at the scene of the accident at the time of its occurrence. Cheryl Chester filed a timely resistance to the motion for partial summary judgment. In essence, Cheryl Chester argues that she arrived at the scene of the accident while it was ongoing and therefore she may recover, as a bystander, for the negligent infliction of emotional distress.

On January 2, 1998, Mustang filed a supplemental motion for partial summary judgment seeking judgment as a matter of law on Cheryl Chester's claim for damages for the pain and suffering of Kevin Chester. Mustang contends that Cheryl Chester cannot create a genuine issue of material fact that Kevin Chester was not rendered unconscious or died instantaneously during the accident. Cheryl Chester resisted Mustang's supplemental motion and asserts that she has generated a genuine issue of material fact as to whether Kevin Chester was rendered unconscious or died instantaneously during the accident.

The court held oral arguments on Mustang's motions for partial summary judgment on March 12, 1998. At the oral arguments, Cheryl Chester was represented by counsel Thomas L. Staack and Chad A. Swanson of Dutton, Braun, Staack & Hellman, P.L.C., in Waterloo, Iowa. Defendant Mustang was represented by counsel A. Roger Witke of Whitfield & Eddy, P.L.C., in Des Moines, Iowa. Counsel were exceptionally well prepared and argued ably the very close questions presented in Mustang's motions for partial summary judgment.

## II. FINDINGS OF FACT

### A. Uncontested Facts

The record reveals that the following facts are undisputed. Defendant Mustang is in-

---

1. One of Mustang's motions raises an issue of first impression under Iowa law. Thus, the court's preference here would be to certify this question to the Iowa Supreme Court. *See* N.D. Ia. L.R. 83.4; Iowa Code § 684A.1. However, because this issue was raised shortly before trial and neither party has requested the court to certify this question, the court declines to certify this question *sua sponte*. Instead, the court will attempt to predict what the Iowa Supreme Court would decide if it were to address this issue.

corporated under the laws of the State of Minnesota, with its principal place of business located in Owatonna, Minnesota. Mustang is engaged in the business of manufacturing and selling Mustang 930A skid steer loaders. On February 7, 1995, the deceased, Kevin B. Chester, was at his farm in Butler County, Iowa, working on or near his Mustang 930A skid loader. He left his house on the farmstead at approximately 10:50 a.m., telling his wife Cheryl Chester that he was going with a bucket of hot water to defrost a frozen hog waterer. Kevin had a doctor's appointment that day at 11:30 a.m. or 12:00 p.m. The doctor's office was located in Waverly, approximately twenty minutes from the Chester's farm.

At approximately 11:00 or 11:10 a.m., Cheryl attempted to reach Kevin by radio twice regarding his doctor's appointment. When Cheryl could not reach Kevin by radio, she went out of the house to look for him. She began searching the driveway and then drove the family's van to some buildings on the north edge of the farmstead without finding him. She returned to the driveway, parked, and noticed that the bucket of hot water was sitting near a shed just off the driveway. At approximately 11:30 a.m., Cheryl discovered Kevin entangled in the skid loader by the shed. He was caught between the skid loader and the boom, facing towards the skid loader with his chest caught between the two.

Cheryl knew immediately that Kevin was trapped by the skid loader, that the bucket was pressing down on him, and that she needed to get the bucket off of him. Kevin Chester was unconscious and unresponsive when she found him. Because of his gloves and hooded coat, Cheryl could not see his hands or face. When Cheryl reached the skid loader, the machine was off and the key was in the off position. Cheryl started the machine and attempted to get the bucket off Kevin by operating the machine and raising the bucket, but the floor pedals would not operate. When Cheryl could not get the bucket to raise, she climbed out of the skid loader, ran to the house, and called 911 immediately. At that same time, Cheryl also called Kevin's father, but he did not answer, so she called for another relative to come.

After Cheryl had reached the other relative, she ran out of the house and found Raymond Vandeventer, the hired hand. After Cheryl located Raymond, they both ran to the shed and began working in an effort to get the bucket off of Kevin. They saw a hand-operated utility jack sitting nearby and tried sticking that under the bucket to raise it, but it would not lift the bucket enough to free Kevin.

Raymond and Cheryl were in the process of trying to lift the bucket when the rescue crew arrived. Approximately fifteen minutes had elapsed from the time Cheryl found Kevin until the rescue crew arrived. The rescue crew used the Jaws of Life to pry the bucket up from the skid loader and free Kevin. When he was freed, the rescue crew began efforts to resuscitate him and then put him in the ambulance. CPR was begun by the Clarksville Ambulance Service personnel at 11:48 a.m. Kevin was freed from the skid loader by the rescue crew and was removed from the farmstead by ambulance approximately ten minutes after the rescue crew had arrived, shortly before 12:00 p.m.

While the CPR was in process at the scene, a blood pressure reading of 90/palp was found in Kevin Chester's left arm. The Waverly Ambulance Service transported Kevin Chester from the farmstead to the hospital at 11:56 a.m., and arrived at the hospital at 12:07 p.m. After Kevin Chester was intubated by Waverly Ambulance Service personnel, he did exhibit some diminished lung sounds on the right side. Kevin Chester was admitted to the Waverly Municipal Hospital emergency room at 12:08 p.m. He was pronounced dead by Daniel Eggers at 12:10 p.m. due to the crash injury sustained to his chest. Kevin Chester had no sign of injury to his head, such as a skull fracture or brain hemorrhage, that is typically associated with a loss of consciousness.

### B. Contested Facts

1. Whether the injury sustained by Kevin Chester rendered him instantaneously unconscious or caused his instantaneous death; and

2. The time of Kevin Chester's death.

## III. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of recent decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–06 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–1174 (N.D.Iowa 1997); *Rural Water Sys. No. 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not reiterate those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394. With these standards in mind, the court turns to consideration of Mustang's motions for partial summary judgment.

### B. Pain And Suffering Damages

In Mustang's supplemental motion for partial summary judgment it contends that Cheryl Chester cannot create a genuine issue of material fact that Kevin Chester was not rendered unconscious or died instantaneously during the accident. As a result, Mustang asserts that, under Iowa law, Cheryl Chester may not recover pain and suffering damages for Kevin Chester's pain and suffering.[2] In response, Cheryl Chester asserts that she has generated a genuine issue of material fact as to whether Kevin Chester was rendered unconscious or died instantaneously during the accident.

■ The Iowa Supreme Court has recognized that a decedent's estate may recover damages for pain and suffering sustained by the deceased. *See Brant v. Bockholt*, 532 N.W.2d 801, 804 (Iowa 1995); *Lang v. City of Des Moines*, 294 N.W.2d 557, 562 (Iowa

---

**2.** Cheryl Chester does not dispute Mustang's choice of law determination that Iowa tort law should be applied in this diversity case.

1980); *Schlichte v. Franklin Troy Trucks,* 265 N.W.2d 725, 727 (Iowa 1978); *Hurtig v. Bjork,* 258 Iowa 155, 138 N.W.2d 62, 63 (1965); *Fitzgerald v. Hale,* 247 Iowa 1194, 78 N.W.2d 509, 510 (1956). The Iowa Supreme Court, however, has placed limits on the recovery of pain and suffering damages. The court has held that "damages for pain and suffering of a decedent may not be recovered 'if death or unconsciousness is instantaneous,' but 'if substantial evidence shows the decedent did suffer pain the item is submissible although the period of consciousness was not protracted.'" *Lang,* 294 N.W.2d at 562 (quoting *Schlichte,* 265 N.W.2d at 727); *cf. Hurtig,* 138 N.W.2d at 62 (affirming award for pain and suffering and noting that when decedent was unconscious she suffered no pain and when semi-conscious she had reduced pain). ·

■ Mustang points to Kevin Chester's death certificate as evidence that Kevin's death was instantaneous. The certificate of death describes the approximate interval between onset of the injury and death as "[i]mmediate." The death certificate, however, does not define or otherwise explain the term "immediate."[3] Cheryl Chester, on the other hand, directs the court's attention to the affidavit of the medical examiner who signed the death certificate, Dr. David B. McMillian, in which he states:

> 8. In my professional opinion, the injury sustained by Kevin Chester is not the type that would cause immediate or instantaneous unconsciousness.
> 9. To a reasonable degree of medical probability, it is my opinion that Kevin Chester most likely suffered through a one to two-minute period of consciousness before losing consciousness.

McMillian Aff. at p. 2.

Mustang hotly disputes the basis on which Dr. McMillian reached his conclusions. However, as the court pointed out above, in the medical examiner's investigative report, Dr. McMillian recognizes the time of Kevin's injury as being 11:00 a.m. with the time of Kevin's death being 11:10 a.m. Thus, Dr.

McMillian has previously placed a time interval between the time of Kevin's injuries and the time of his death. While the court recognizes that some of Dr. McMillian's statements in his affidavit might prove difficult to square with the death certificate he prepared, these possible conflicts present questions of credibility which require jury resolution. Judges must resist the temptation to assess witnesses' credibility at the summary judgment stage, or impose our view of contested facts. Indeed, the advisory committee's note to Rule 56(e) clearly states: "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." FED. R. CIV. P. 56(e) advisory committee note to 1963 amendment; *see Wood v. Allstate Ins. Co.,* 21 F.3d 741, 746 (7th Cir.1994) (quoting advisory committee note). Thus, the court concludes that Dr. McMillian's affidavit generates a genuine issue of material fact as to whether Kevin Chester was rendered unconscious or died instantaneously as a result of the accident. Therefore, Mustang's Supplemental Motion For Partial Summary Judgment is denied. The court turns next to an examination of Cheryl Chester's claim for emotional distress.

## C. *Chester's Bystander Liability Claim*

Having determined that Iowa law is controlling here, the issue presented by Mustang's motion for partial summary judgment is whether Cheryl Chester, as a bystander, may pursue a claim for negligent infliction of emotional distress under Iowa law when she was not present at the time Kevin's accident commenced but arrived while it was still ongoing. The court will begin its analysis with a review of the general principles of bystander liability.

### 1. *General principles of bystander liability*

■ The concept of bystander liability was first recognized by American courts in the

---

3. The court notes that although Kevin's death certificate describes his death as "immediate," the medical examiner's investigative report, also completed by Dr. McMillian, identifies the time of Kevin's injury as being 11:00 a.m. with the time of Kevin's death being 11:10 a.m.

landmark case of *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). Drawing in part from English common law, the California Supreme Court held that a mother could recover for emotional and physical injuries suffered "from witnessing the [negligent] infliction of death or injury to her child." *Id.* 441 P.2d at 914. Iowa has adopted the bystander rules originally promulgated by the California Supreme Court in *Dillon. See Barnhill v. Davis,* 300 N.W.2d 104, 107 (Iowa 1981). In *Barnhill,* the Iowa Supreme Court established the following five elements of a bystander's claim for emotional distress caused by witnessing peril to a victim proximately caused by the negligence of another:

1. The bystander was located near the scene of the accident.

2. The emotional distress resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

3. The bystander and the victim were husband and wife or related within the second degree of consanguinity or affinity.

4. A reasonable person in the position of the bystander would believe, and the bystander did believe, that the direct victim of the accident would be seriously injured or killed.

5. The emotional distress to the bystander must be serious.

*Id.* at 108; *accord Pekin Ins. Co. v. Hugh,* 501 N.W.2d 508, 511 (Iowa 1993).

In this case, the parties do not dispute that evidence of the first, third, fourth, and fifth criteria exists. Rather, the parties dispute centers on the second criteria, and whether Cheryl Chester can satisfy the contemporaneous perception prong.

#### 2. *Application of contemporaneous perception prong*

Mustang asserts that Cheryl Chester's claim for emotional distress fails as a matter of Iowa law because she cannot satisfy the contemporaneous perception prong due to the fact that she was not present when Kevin was initially pinned by the skid loader's bucket. Cheryl Chester asserts that while she was not present at the time the accident commenced, she did arrive while it was still ongoing and therefore does meet the contemporaneous perception prong. Under the principles of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Iowa state law supplies the substantive rules of decision in this diversity case.

The Iowa appellate courts have had limited opportunities to provide guidance regarding the scope of the contemporaneous perception prong. However, as recently as 1991, the Iowa Supreme Court declined an invitation to extend existing law by recognizing a claim for emotional distress where the bystander did not witness the accident but arrived at the scene only a few minutes after its completion. *See Fineran v. Pickett,* 465 N.W.2d 662, 664 (Iowa 1991). In *Fineran,* the plaintiffs, the parents and two sisters of a traffic accident victim, contended that they should have been permitted to recover emotional distress damages as a result of their arrival at an automobile accident scene shortly after its occurrence. *Id.* at 663. The victim was struck by an automobile while riding her bicycle. At the time of the accident, the victim's father and one of her sisters were riding their bicycles some distance behind the victim and did not witness the collision, but arrived at the accident scene approximately two minutes after the collision. *Id.* They observed the victim lying in the roadway near her bicycle where she was being attended to by another person. *Id.* The victim was unconscious with impaired breathing, and she appeared to be having a seizure. The victim's father sent the sister to a nearby campground to notify the victim's mother and another sister. The mother and sisters immediately went to the accident scene, arriving approximately five minutes after the collision. *Id.* The plaintiffs asserted that their post-accident arrival "was sufficiently contemporaneous with the event that the shock which they experienced was the equivalent of having witnessed the collision." *Id.* Rejecting this argument, the Iowa Supreme Court instructed that:

The criteria laid down in *Barnhill* make it clear that bystander recovery for emotional distress is strictly limited to situa-

tions which involve "witnessing peril to a victim," and which have produced emotional distress from "sensory and contemporaneous observance of the accident as contrasted with learning of the accident ... after its occurrence." *Barnhill,* 300 N.W.2d at 108 (emphasis added). Unless we are to substantially depart from that requirement, the judgment of the trial court was clearly correct. As we recognized in *Roberts v. Bruns,* 387 N.W.2d 140 (Iowa 1986), the issue presented in situations of this kind "is one of legal causation, *i.e.,* whether the policy of the law will extend responsibility to those consequences which have in fact been produced by a particular event." *Id.* at 143.

Prior to our *Barnhill* decision, this court had not recognized a right to recover emotional distress damages under any circumstances in the absence of physical injury. We do not now dispute, and plaintiffs' arguments satisfactorily demonstrate, that emotional distress, often severe, will frequently befall members of the family of a severely injured person who do not meet the *Barnhill* requirements. We were not oblivious to this possibility in deciding that case. The requirement of "sensory and contemporaneous observance of the accident" was purposely adopted so as to not extend liability for emotional distress to all situations in which such damages are foreseeable. We opt to hold the line on this limitation.

*Id.* at 664.

■ Thus, the court concludes that the Iowa courts inquiry is focused on two closely related aspects: whether the plaintiff was in a situation which involved " 'witnessing peril to a victim,' " and which "produced emotional distress from 'sensory and contemporaneous observance of the accident as contrasted with learning of the accident ... after its occurrence.' " *Id.* (quoting *Barnhill,* 300 N.W.2d at 108). The latter inquiry turns on whether the bystander had a perception of incident distinguishable from the situation of learning about the incident from others after its occurrence.

Mustang asserts that Cheryl Chester arrived at the scene after the accident had occurred and therefore her claim is precluded by the holding in *Fineran. Fineran* is factually distinguishable from the facts of this case, and therefore *Fineran* is not controlling precedent. While Cheryl Chester did not witness the bucket of the skid loader fall on Kevin, she was the first person on the scene. Unlike the plaintiffs in *Fineran* who arrived minutes after the traffic accident had occurred and saw the victim lying on the roadway being attended to by another person, Cheryl Chester arrived to see her husband still trapped by the skid loader's bucket.[4] The fact that the peril causing incident was still in progress at the time of Cheryl Chester's arrival on the scene distinguishes this case from *Fineran.* Thus, the court is called upon here to ascertain whether, given the present state of Iowa law, the Iowa Supreme Court would permit recovery for emotional distress where the plaintiff is present at the scene of any portion of an event causing peril or injury to the victim.

■ Since the Iowa appellate courts have not addressed this key issue, the court must attempt to predict what that court would decide if it were to address the issue. The court seeks guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law. *See Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.,* 118 F.3d 1263, 1267 (8th Cir.1997); *In re Bargfrede,* 117 F.3d 1078, 1080 (8th Cir.1997); *Ventura v. Titan Sports, Inc.,* 65 F.3d 725, 729 (8th Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1268, 134 L.Ed.2d 215 (1996); *B.B. v. Continental Ins. Co.,* 8 F.3d 1288, 1291 (8th Cir.1993).

■ The wellspring for Iowa's adoption of the concept of bystander liability was the

---

4. The court finds that an issue of material fact exists as to the time of Kevin's death. Although the medical examiner placed the time of death at 11:00 a.m. on Kevin's death certificate, almost an hour later, at approximately 12:00 p.m., the emergency medical team found a blood pressure reading of 90/palp in Kevin Chester's left arm and Kevin did exhibit some diminished lung sounds on the right side.

California Supreme Court's decision in *Dillon*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912. *See Barnhill*, 300 N.W.2d at 107 (citing to *Dillon*, 69 Cal.Rptr. 72, 441 P.2d at 920). Because Iowa has adopted the bystander rules originally promulgated by the California Supreme Court in *Dillon*, the court will commence its quest by an examination of relevant California case law precedent.

This case is similar, although certainly not identical, to *Ortiz v. HPM Corp.*, 234 Cal. App.3d 178, 285 Cal.Rptr. 728 (1991). In *Ortiz*, a husband and wife worked together at a plant where the husband was responsible for production and for keeping plastic injection molding machines running while his wife was a machine operator in the plant. *Id.* 285 Cal.Rptr. at 729. One day the wife noticed that machine number 11 had stopped working and went to tell her husband, who was at machine number 12. *Id.* The wife saw that her husband "was inside the mold area" of that machine and was "pressed between the cylinder and a stationary part of the machine; the machine was still running. Blood was dripping down his arm and his body was limp." *Id.* The husband was eventually freed, but he had suffered serious injuries. The *Ortiz* court reversed a nonsuit granted against the wife on her claim for emotional distress, stating: "In this case, as in *Ochoa*, the injury-producing event continued for a period of time, and the plaintiff personally observed the event while it still was occurring. We do not believe that the bright line drawn in *Thing v. La Chusa*, [48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989)] was intended to deny recovery to a plaintiff who personally observed an injury-producing event in progress." *Id.* 285 Cal.Rptr. at 732. The court noted that "[The wife] saw the occurrence which caused her husband's injury, and she was fully aware that he was being injured." *Id.* at 732. The *Ortiz* court concluded the jury could find "that the injury-producing event was still occurring at the time [wife] discovered [husband] trapped in the machine, and that she was then aware that it was causing injury to him, so as to meet the contemporaneous observation requirement for a claim of negligent infliction of emotional distress." *Id.*

Mustang asserts in its reply brief, and forcefully argued at the summary judgment hearing, that *Ortiz* is distinguishable based on the fact that in *Ortiz* the machine causing the peril was still running when the wife first observed her husband whereas here, the skid loader was turned off. The *Ortiz* court noted that when the wife found her husband, "[t]he machine was still running at that time; its pressure system was on, and it was exerting pressure on Mr. Ortiz, particularly across his chest." Similarly, here, the skid loader's bucket was still trapping Kevin and exerting pressure on his chest at the time Cheryl Chester discovered him. The court considers as extremely significant the fact that Cheryl Chester observed first hand the ongoing peril posed by the skid loader's bucket to Kevin. The court notes that the Iowa Supreme Court has emphasized that bystander recovery for emotional distress is limited to those situations where a bystander witnesses the peril of the related victim. *See Fineran*, 465 N.W.2d at 664; *Oberreuter v. Orion Indus., Inc.,* 342 N.W.2d 492, 493 (Iowa 1984); *Walker v. Clark Equip. Co.*, 320 N.W.2d 561, 562 (Iowa 1982); *Barnhill*, 300 N.W.2d at 108. This is precisely the situation that Cheryl Chester alleges in this case—that she came upon her critically injured husband who was still imperilled by the skid loader's bucket's exertion of force on his chest. Furthermore, as denoted above, Iowa courts also focus on whether the bystander had a perception of incident distinguishable from the situation of learning about the incident from others after its occurrence. *Fineran*, 465 N.W.2d at 664; *Barnhill*, 300 N.W.2d at 108. Here, because Cheryl Chester arrived on the scene while her husband was still trapped by the skid loader's bucket, her perception of the accident is clearly distinguishable from the situation where one learns about an accident from others after its occurrence. Thus, the court rejects Mustang's attempt to distinguish *Ortiz* on this basis.

The court further finds instructive the decision in *Wilks v. Hom*, 2 Cal.App.4th 1264, 3 Cal.Rptr.2d 803 (1992). *Wilks* concerned an explosion and fire that occurred in a residence rented by the plaintiff and her three young daughters. *Id.* 3 Cal.Rptr.2d at 804. On the morning of the explosion, the plain-

tiff's boyfriend had hooked up the house's propane system to a propane stove. Later that day, when one of the plaintiff's daughters pulled a vacuum cleaner plug out of the electrical socket, an explosion resulted that blew the plaintiff and one of her daughters out of the house and trapped the other two daughters inside the burning home. *Id.* One of the daughters trapped inside the house was killed and the other was severely burned. Although the plaintiff was aware that the explosion and fire likely harmed her two daughters, she could not visually witness the infliction of the injury. *Id.* at 807. The California Court of Appeals concluded that "it is not necessary that a plaintiff bystander actually have witnessed the infliction of injury to her child, provided that the plaintiff was at the scene of the accident and was sensorially aware, in some important way, of the accident and the necessarily inflicted injury to her child." *Id.*

Similarly, in *In re Air Crash Disaster Near Cerritos, Cal., On Aug. 31, 1986,* 967 F.2d 1421 (9th Cir.1992), the plaintiff left her husband and children at home one morning to buy breakfast food at a nearby grocery store. Returning from the store, the plaintiff "saw, heard, and felt a big explosion." *Id.* at 1422. Upon arriving home, the plaintiff discovered that an airliner had crashed into her home which was now engulfed in flames. The plaintiff's family was killed in the explosion and fire. *Id.* The plaintiff brought an action for negligent infliction of emotional distress. Applying California law, the Ninth Circuit Court of Appeals, guided by the reasoning in *Wilks,* concluded that the plaintiff was sensorially aware that injury was being inflicted on her family. Regarding whether the plaintiff was present at the scene of the injury-producing event, the Ninth Circuit Court of Appeals stated:

> The district court did not err by concluding that Estrada was at the scene of the injury-producing event.... Estrada saw the fire consuming the home in which she had just left her family. The injury-producing event was the fire. Since Estrada was present at the scene of the fire, she was present at the scene of the injury-producing event. The district court correctly found that Estrada knew her hus-

band and children were being injured by the fire.... Estrada left her house briefly to go the store, leaving her husband in his pajamas in the living room and her children asleep in bed. There could be very little doubt in Estrada's mind that her husband and children were in the house that she saw engulfed in flames. In holding that Estrada may recover for the negligent infliction of emotional distress, we are mindful of the California Supreme Court's determination that "it is appropriate to restrict recovery to those persons who will suffer an emotional impact beyond the impact that can be anticipated whenever one learns that a relative is injured, or dies." *Thing,* 257 Cal.Rptr. at 880, 771 P.2d at 829. Estrada's emotional distress did not stem merely from the knowledge that her husband and children had died. Estrada understandably experienced great emotional distress as a result of watching helplessly as flames engulfed her home and burned her family to death.

*Id.* at 1425. Both the *Wilks* and *In re Air Crash* decisions resemble the facts of the present case in that the plaintiffs in each case were at the scene of an accident and were sensorially aware, in some important way, of the accident and the peril it created for the plaintiff's respective relative.

The court also finds illuminative the New Jersey Supreme Court's decision in *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980). In *Portee,* the New Jersey Supreme Court recognized a cause of action for the negligent infliction of emotional injury experienced by a bystander who witnessed the wrongful death of another person. *Id.* 417 A.2d at 522. In *Portee,* plaintiff's seven-year-old son was trapped between the door and shaft of an apartment-house elevator. Another child discovered the boy and ran for help. *Id.* Over a four-hour period, the mother observed rescue efforts, during which her son, who suffered multiple fractures and massive internal hemorrhaging, moaned, screamed in pain, and flailed his arms from his trapped position. *Id.* While his mother watched, he died, still trapped. *Id.* at 523. On these facts, the New Jersey Supreme Court recognized the plaintiff's claim for her emotional

distress caused by the elevator company's failure to maintain the elevator in a safe condition.

In recognizing a bystander's cause of action for the negligent infliction of emotional injury, the New Jersey Supreme Court cited approvingly to *Dillon*, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912, which supplied the foundation for the Iowa Supreme Court's own adoption of bystander claims for negligent infliction of emotional distress. *Portee*, 417 A.2d at 526. In *Portee*, the New Jersey Supreme Court adopted a standard for bystander claims for negligent infliction of emotional distress nearly identical to Iowa's. Under the *Portee* decision, for a bystander-plaintiff to prevail a claim, the plaintiff must demonstrate the following four factors: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between the plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Id.* at 528. Although the plaintiff in *Portee* had not observed the initial impact on the victim, the New Jersey Supreme Court allowed her claim because she had witnessed a shocking event. The court noted that it was limiting recovery "to negligent conduct which strikes at the plaintiff's basic emotional security," *id.* at 527, recognizing that while the discovery of the death or serious injury of an intimate family member "will always be expected to threaten one's emotional welfare. Ordinarily, however, a witness at the scene of the accident causing death or serious injury will suffer a traumatic sense of loss that may destroy his sense of security and cause severe emotional distress." [5] *Id.*

5. The court notes that a number of states have recognized that a contemporaneous sensory perception of an accident includes both the sensory perception of the accident itself or its immediate aftermath at the scene. *See Gabaldon v. Jay–Bi Property Management, Inc.*, 122 N.M. 393, 925 P.2d 510, 513 (1996); *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis.2d 627, 517 N.W.2d 432, 445 (1994); *City of Austin v. Davis*, 693 S.W.2d 31 (Tex.App.1985); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837 (Tex.App.1982); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.App.1978). In *Bowen*, the Wisconsin Supreme Court attempted to define the tort of bystander recovery in terms of the interests it protects. The Wisconsin Supreme Court observed:

> The tort of negligent infliction of emotional distress compensates plaintiffs whose natural shock and grief upon the death or severe physical injury of a spouse, parent, child, grandparent, grandchild, or sibling are compounded by the circumstances under which they learn of the serious injury or death. This tort reflects, for example, the intensity of emotional distress that can result from seeing the incident causing the serious injury or death first hand or from coming upon the gruesome scene minutes later.

*Id.* 517 N.W.2d at 445. The *Bowen* court further observed that:

> [T]he plaintiff observed an extraordinary event ...[,] arriving on the scene of a serious accident minutes after it occurred and seeing her 14–year–old son fatally injured and entangled in the wreckage ...[,] an extraordinary experience, distinct from the experience of learning of a family member's death through indirect means.... The distinction between on the one hand witnessing the incident or the gruesome aftermath of a serious accident minutes after it occurs and on the other hand the experience of learning of the family member's death through indirect means is an appropriate place to draw the line between recoverable and non-recoverable claims.

> .....

> The shock of seeing efforts to save the life of an injured spouse in an ambulance or hospital, for example, will not be compensated because it is a life experience that all may expect to endure. The compensable serious emotional distress of a bystander under the tort of negligent infliction of emotional distress is not measured by the acute emotional distress of the loss of the family member. Rather the damages arise from the bystander's observance of the circumstances of the death or serious injury, either when the injury occurs or soon after.

*Id.* at 444–45. The logic underlying these decisions is compelling. A family member may come upon the scene of an accident so soon after the accident that the victim's condition is virtually the same as at the time of impact. Under such circumstances, the effect of the incident on the family member is indistinguishable. In both situations, the family member observes an extraordinary event, one that is distinguishable from the emotional distress that invariably attends nearly every accidental death or serious injury of a family member. An additional consideration in defining the scope of the tort of bystander liability was noted by the Wisconsin Supreme Court in *Bowen*:

> Claimants and courts need a framework for evaluating a bystander's claims of negligent infliction of emotional distress. The framework should be free of artificial, vague and inconsistent rules, yet should allow plaintiffs to recover for negligently inflicted severe emotional distress while protecting tortfeasors

**1050**

Thus, like Cheryl Chester here, the plaintiff in *Portee* arrived at the scene of a horrific accident after it had commenced only to find a loved one trapped and still imperilled by the circumstances of the accident. As the court noted above, the Iowa Supreme Court has limited bystander recovery for emotional distress to those situations where the bystander actually witnesses the peril to a close relative created by an accident, and where the bystander had a perception of incident distinguishable from the situation of learning about the incident from others after its occurrence.

 The court discerns no serious conflict between California, New Jersey and Iowa law with respect to Cheryl Chester's claim for negligent infliction of emotional distress. It is the opinion of the court that, in the present state of the law in Iowa, the Iowa Supreme Court would recognize a claim for negligent infliction of emotional distress by a bystander where the individual is not present at the time an incident commences but arrives while it was still ongoing. Such circumstances would satisfy Iowa's contemporaneous perception requirement where the accident victim is still imperilled due to the circumstances of the incident at the time the bystander appears at the scene. Because Cheryl Chester arrived at the accident scene while her husband was still imperilled from the circumstances of the accident, her perception of incident is quite distinguishable from the situation of learning about the accident from others after its occurrence. Thus, the court finds that she has stated a claim for negligent infliction of emotional distress by a bystander under Iowa law, and Mustang's Motion For Partial Summary Judgment is denied.

## IV. CONCLUSION

The court initially concludes that Cheryl Chester has generated a genuine issue of material fact regarding whether Kevin Chester was rendered unconscious or died instantaneously as a result of the accident. As a result, Mustang's Supplemental Motion For Partial Summary Judgment is denied. The court further concludes that in the present state of the law in Iowa, the Iowa Supreme Court would recognize a claim for negligent infliction of emotional distress by a bystander where the individual is not present at the time an incident commences but arrives while it was still ongoing. The court finds that Cheryl Chester has stated a claim for negligent infliction of emotional distress by a bystander under Iowa law, and Mustang's Motion For Partial Summary Judgment is denied.

**IT IS SO ORDERED.**

---

from spurious claims, from claims concerning minor psychic and emotional shocks, and from liability disproportionate to culpability. *Id.* 517 N.W.2d at 442. While the court finds such logic compelling and the demarcation line drawn by these decisions inviting, given the language of the Iowa Supreme Court's decision in *Fineran,* the court is obliged to conclude that Iowa has only recognized that a contemporaneous sensory perception of an accident includes the sensory perception of the accident itself, but not its immediate aftermath at the scene.